STATE of Minnesota, Respondent,

v.

Mike KAQUATOSH, Appellant.

No. C4–99–970.

Court of Appeals of Minnesota.

Sept. 28, 1999.

**154**

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN (for respondent).

John M. Stuart, State Public Defender, Sharon E. Jacks, Assistant Public Defender, Minneapolis, MN (for appellant).

Considered and decided by KLAPHAKE, Presiding Judge, ANDERSON, Judge, and NORTON, Judge.

## OPINION

NORTON,* Judge.

The trial court revoked appellant Mike Kaquatosh's probation when he failed to complete court-ordered sex-offender treatment because he refused to admit to a treatment counselor that he had committed the sex offense underlying the conviction from which he is appealing. Kaquatosh contends the trial court's action violated his Fifth Amendment privilege against compelled self-incrimination and was an abuse of discretion. We agree, and reverse and remand to the trial court so that it can delete from the probation order the requirement that Kaquatosh admit the facts underlying the conviction he is presently appealing.

## FACTS

On December 29, 1997, Kaquatosh was charged with two counts of criminal sexual conduct. Following a period of negotiation, Kaquatosh waived his right to a jury trial and submitted the case to trial on stipulated facts before the court. The trial court found Kaquatosh guilty of second-degree criminal sexual conduct and pursuant to the parties' negotiated agreement, dismissed the first-degree charge. As part of the pre-sentence investigation, Kaquatosh was ordered to participate in an

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

assessment to determine his need for sex-offender treatment. *See* Minn.Stat. § 609.3452, subd. 1 (1998) (mandating sex-offender treatment assessments).

On January 21, 1999, Kaquatosh went to Alpha Human Services for an assessment. Following the assessment, the intake coordinator advised the investigating probation officer:

[Kaquatosh] would only sign a release of information giving me permission to notify you of his attendance at his appointment and to inform you that he is denying all of the allegations of sexual abuse as outlined in the criminal complaint. Therefore, [Kaquatosh] is not viewed as an appropriate candidate for any of Alpha's programs at this time.

The next day, Kaquatosh participated in an evaluation with a Hennepin County court services psychologist. Kaquatosh again refused to admit any wrongdoing. Similarly, in his interview with the investigative probation officer, Kaquatosh denied all allegations of sexual misconduct.

On February 17, 1999, the trial court sentenced Kaquatosh to 21 months in prison and imposed a mandatory five-year conditional release term, but stayed execution of the sentence and placed him on probation for ten years. As part of the terms of his probation, the court ordered Kaquatosh to attend and complete sexual offender treatment. The court explained that if Kaquatosh denied the offense it would be considered a failure to participate in treatment and the court would revoke Kaquatosh's probation. The court's probation order filed on March 16, 1999, reiterated the requirement that Kaquatosh successfully complete sex-offender treatment and that "denial of offenses [is] not acceptable as reasons why not accepted into a treatment program."

On March 15, 1999, Kaquatosh applied to the office of the state public defender for assistance in appealing his conviction. On March 26, 1999, Kaquatosh appeared before the court and initially requested execution of his sentence. After some discussion, Kaquatosh decided instead to continue on probation. The court again ordered Kaquatosh to go through the sex-offender treatment program or it would execute Kaquatosh's sentence.

Before Kaquatosh went to his intake appointment for sex-offender treatment, he contacted his appellate attorney. Appellate counsel advised Kaquatosh that he should participate in all respects, but should assert his Fifth Amendment privilege against self-incrimination and not discuss or admit the facts underlying his conviction while his appeal was pending.

When Kaquatosh went to his sex-offender intake interview at Alpha Human Services, he again refused to discuss the offense, however, he indicated his refusal was on the advice of counsel because he was appealing his conviction. Kaquatosh stated he was willing to cooperate and would discuss his prior convictions not subject to appeal. Psychologist Douglas Williams informed Kaquatosh that the prior convictions were not grounds for participation in sex-offender treatment and that he should wait until after his appeal was resolved to participate in Alpha's treatment program. Williams informed the probation department that Kaquatosh was inappropriate for sex-offender treatment at this time but might be reconsidered for treatment at a later date. Based on this information, Kaquatosh was arrested for not cooperating with sex-offender treatment and a probation revocation hearing was held on April 21, 1999.

At the hearing, defense counsel advised the court that Kaquatosh's appellate counsel had independently advised Kaquatosh he had a "constitutional right" not to make admissions. Defense counsel explained that Kaquatosh had been found inappropriate for the sex-offender treatment program and was in direct violation of the court's last order. On his own behalf, Kaquatosh stated he was willing to participate until his appellate counsel advised him not to.

The trial court concluded Kaquatosh had not cooperated with sex-offender treatment as ordered and revoked Kaquatosh's probation. In reaching this conclusion, the trial court stated:

Cooperation with the program was quite explicit that you had to do what the treatment program required of you, which was to make some admissions here so they could get to the root of whatever problems they deemed were there. That's the reason you were sent to that treatment program. I'm not certain how your appellate lawyer's intervention is causing you to think about what this Court ordered you to do and your willingness before me to do that.

Kaquatosh responded:

I was willing till [appellate counsel] advised me not to Your Honor. * * * So what do I do, jeopardize my Fifth Amendment in doing this when she advises me not to? Which road do I take?

The trial court then stated:

Mr. Kaquatosh, based on the times you've been before me, based on the representations made to me both by yourself, by the Alpha Human Services program, the probation staff's report to me, I deem and find that you are not amenable to treatment.

Kaquatosh appealed the revocation of his probation to this court.

## ISSUE

Did the trial court violate Kaquatosh's Fifth Amendment Right to be free from self-incrimination by revoking Kaquatosh's probation for being unamenable to sex-offender treatment when treatment required Kaquatosh to admit the facts underlying his conviction for criminal sexual conduct while his appeal from that conviction is pending?

## ANALYSIS

Setting the conditions of probation is within the discretion of the trial court. *State v. Niemczyk*, 400 N.W.2d 401, 404 (Minn.App.1987).

The trial court [also] has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion.

*State v. Balma*, 549 N.W.2d 102, 104 (Minn.App.1996) (quoting *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn.1980)). In order to revoke probation, a trial court must make three findings:

the specific condition or conditions that were violated; * * * the violation was intentional or inexcusable; and * * * the need for confinement outweighs the policies favoring probation.

*Austin*, 295 N.W.2d at 250.

But, whether the trial court violated Kaquatosh's Fifth Amendment privilege against self-incrimination is a question of law which this court reviews de novo. *See State ex rel. Morrow v. LaFleur*, 590 N.W.2d 787, 791 (Minn.1999) (reviewing de novo defendant's Fifth Amendment challenge to the Commissioner of Corrections' imposition of a disciplinary sanction).

The Fifth Amendment to the United States Constitution provides in part that no person may be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In addition to allowing refusal to testify at one's criminal trial, the privilege permits refusal to answer any official questions put to an individual in any civil or criminal proceeding if the answers might be incriminating in a future criminal proceeding. *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984) (quotation omitted); *Taylor v. Lieffort*, 568 N.W.2d 456, 458 (Minn.App.1997). When an individual asserts the privilege,

he "may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without at that time being assured that neither it nor its fruits may

be used against him" in a subsequent criminal proceeding.

*Murphy*, 465 U.S. at 429, 104 S.Ct. at 1143 (quoting *Maness v. Meyers*, 419 U.S. 449, 473, 95 S.Ct. 584, 598, 42 L.Ed.2d 574 (1975)). An individual does not lose this privilege because he is convicted of a crime or is on probation. *Murphy*, 465 U.S. at 426, 104 S.Ct. at 1141. The privilege against compelled self-incrimination "continues until the time for appeal has expired or until the conviction has been affirmed on appeal." *United States v. Duchi*, 944 F.2d 391, 394 (8th Cir.1991); *see also Taylor*, 568 N.W.2d at 458 (implying the Fifth Amendment privilege continues until the direct appeal of the conviction has concluded.)

■ Whether a convicted probationer's right against self-incrimination is violated when his probation is revoked because he refused to admit the facts underlying the conviction he is appealing is an issue of first impression in Minnesota.

In *State ex rel. Morrow*, however, our supreme court interpreted the Fifth Amendment in the context of a similar issue. In *Morrow*, the defendant petitioned for a writ of habeas corpus, challenging the disciplinary sanction (delayed release from incarceration) imposed on him by the Commissioner of Corrections for failure to participate in and complete sex-offender treatment. 590 N.W.2d at 789. Like Kaquatosh, Morrow claimed imposition of the disciplinary sanction based on his refusal to admit his offense and thereby participate in the sex-offender treatment program violated his Fifth Amendment privilege against self-incrimination. *Id.* at 792.

. The supreme court disagreed and held that delaying Morrow's supervised release date was not a sufficient "compulsion" to implicate the Fifth Amendment. *Id.* Focussing on the "nature of the compulsion," the supreme court concluded:

> Morrow had a choice between treatment and confinement for a larger portion of his sentence, and that choice does not

rise to the level of compulsion necessary in order to constitute a Fifth Amendment violation.

*Id.* (quotation omitted). The court went on to explain an "important distinction" exists between being released from prison earlier than the time ordered in one's sentence and losing one's freedom when one is not serving a sentence. *Id.* at 793. Thus, it held loss of an opportunity for an earlier supervised release "does not constitute a substantial penalty for purposes of the Fifth Amendment." *Id.*

The court, however, specifically listed revocation of probation as a substantial penalty "that cannot be imposed * * * because a witness elects to exercise his Fifth Amendment privilege not to give incriminating testimony against himself." *Id.* (quoting *United States v. Frierson*, 945 F.2d 650, 658 (3d Cir.1991)). This is supported by the United States Supreme Court's statements in *Murphy*. In explaining under what circumstances the Fifth Amendment privilege becomes self-executing, the Court stated:

> A State may require a probationer to appear and discuss matters that affect his probationary status: such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however, relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. [Thus,] * * * if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Murphy*, 465 U.S. at 435, 104 S.Ct. at 1146.

In the present case, Kaquatosh was under a court order to comply with the poli-

cies of the sex-offender treatment program and was specifically told by the trial court that if he failed to admit his offense his probation would be revoked. When he failed to make the required admissions, his probation was revoked.[1]

This is precisely the situation proscribed by our supreme court in *Morrow* and the United States Supreme Court in *Murphy*. In *Morrow*, the court noted revocation of probation is a penalty that cannot be imposed for exercising the Fifth Amendment privilege against self-incrimination. 590 N.W.2d at 793. Similarly, in *Murphy*, the Supreme Court acknowledged a state may not revoke probation "because a probationer refused to make nonimmunized disclosures concerning his own criminal conduct." 465 U.S. at 439, 104 S.Ct. at 1148; *see also Mace v. Amestoy*, 765 F.Supp. 847, 852 (D.Vt.1991) (holding "a person in a probation setting can not be forced to incriminate himself without the state granting him immunity first"); *People v. Elsbach*, 934 P.2d 877, 881 (Colo.Ct.App. 1997) (holding if a probationer is required to participate in therapy which involves truthfully answering questions designed to solicit incriminating responses, a Fifth Amendment violation occurs if the state expressly or by implication asserts that invocation of the privilege would lead to revocation of probation); *State v. Fuller*, 276 Mont. 155, 915 P.2d 809, 813–15 (1996) (holding defendant was placed in classic penalty situation when he was required as condition of probation to participate in treatment program that required participants to disclose their offense history); *State v. Cate*, 165 Vt. 404, 683 A.2d 1010,

1018 (1996) (holding a probationer "cannot be forced to incriminate himself without first receiving immunity from criminal prosecution as a result thereof").

Thus, we conclude the trial court violated Kaquatosh's Fifth Amendment right to be free of self-incrimination when it revoked his probation because he refused to make disclosures concerning his offense while his appeal was pending. By directing in the probation order that Kaquatosh admit the elements of his underlying offense while his appeal was pending, the trial court essentially nullified Kaquatosh's right to appeal. It placed Kaquatosh between the Scylla and Charybdis by forcing him to choose between confessing and invalidating his appeal or going to jail.[2]

## DECISION

Revocation of Kaquatosh's probation for failing to complete sex-offender treatment when the treatment required Kaquatosh to admit the facts underlying the conviction being appealed violated Kaquatosh's Fifth Amendment right to be free from self-incrimination. The trial court, therefore, abused its discretion when it revoked Kaquatosh's probation and executed the prison sentence. We reverse and remand to the trial court so that it can delete from the probation order the requirement that Kaquatosh admit the facts underlying the conviction he is presently appealing.

**Reversed and remanded.**

---

1. This situation differs from that in *Morrow* where the defendant's release from incarceration was delayed because he refused to answer "relevant official inquiries," and was thus indirectly required to admit his offense. In the instant case, the trial court's probation order directly required Kaquatosh to incriminate himself by admitting the facts underlying the conviction he is appealing.

2. We note, it was unnecessary for the trial court to place Kaquatosh in this quandary. It could have provided Kaquatosh with limited immunity. *See Welfare of J.W.*, 415 N.W.2d 879, 884 (Minn.1987) (noting where trial court's order imposed a rehabilitation plan that required parents to incriminate themselves and violated their Fifth Amendment rights the state could have sought a grant of immunity allowing parents to participate in therapy without fear of prosecution). The court could also have allowed Kaquatosh to participate in a different type of treatment program that did not make confession a prerequisite for admittance.