STATE of Minnesota, Respondent,

v.

Chaqui Tenae FRANKLIN, petitioner, Appellant.

No. C1–99–635.

Supreme Court of Minnesota.

Jan. 6, 2000.

John Stuart, State Public Defender, Steven P. Russett, Assistant State Public Defender, Minneapolis, for appellant.

Michael A. Hatch, Minnesota Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, for respondent.

## OPINION

PAUL H. ANDERSON, Justice.

Chaqui Franklin contests a probation condition excluding her from the city of Minneapolis. Franklin asserts that imposition of this condition was an abuse of the district court's discretion. The Minnesota Court of Appeals held the condition valid. We reverse.

On June 29, 1998, appellant Chaqui Franklin was arrested for trespass at Bossen Terrace Apartments, an apartment complex located in the city of Minneapolis. The arrest was made by an off-duty Minneapolis police officer who was patrolling the area around the apartments as a part-time employee of a property management company. Following the arrest, the officer placed Franklin in the back seat of a police squad car. The officer did not handcuff Franklin. While in the squad car, Franklin began yelling, screaming, and kicking at the door. At this time, the officer observed Franklin's mother come running towards the squad car while yelling at the officer. The officer then began to open the door so that Franklin could speak with her mother. When the officer opened the door, Franklin kicked the door, kicked the officer, struck the officer with her fists, grabbed for the officer's gun, and choked the officer until the officer became light headed. Franklin's choke hold was broken only with the help of a bystander.

Hennepin County authorities charged Franklin with Assault in the Fourth Degree and Obstructing Legal Process or Arrest, both felonies. *See* Minn.Stat. §§ 609.2231; 609.101, subd. 2; 609.50, subds. 1(2), 2(1) (1998). Franklin subsequently pleaded guilty to both charges. The guilty pleas were accepted and the date for her sentencing hearing was set. At the sentencing hearing, Franklin withdrew her guilty plea and trial dates were scheduled. Franklin was then released pending trial on the condition that she: 1) have no contact with the officer whom she had assaulted, 2) stay away from Bossen Terrace, and 3) regularly "check in."

Over the next three months, Franklin had contact with the officer and did not regularly "check in." In addition, she failed a drug test. As a result, her conditional release was revoked and she was arrested and jailed. Subsequently, in February 1999, Franklin appeared for trial and again pleaded guilty to both charges. At this time, Franklin admitted to the facts in the complaint and, because a presentence report had already been completed, the court proceeded with sentencing. The presentence report indicated that Franklin was a 19–year–old mother of a 19–month–old child. The child lived with Franklin's mother at Bossen Terrace. The report also noted that Franklin had been living with her half-sister in St. Paul for the last year because of conflict between Franklin and Franklin's mother.

At sentencing, the state argued that the charged offenses were serious and should be sentenced as felonies due to Franklin's repeated unwillingness to follow the "very minimal rule" that she stay away from Bossen Terrace. In addition, the officer whom Franklin had assaulted appeared and testified that requiring Franklin to stay away from the Bossen Terrace area would not make a difference because of Franklin's demonstrated unwillingness to follow court orders. The officer also testified that Franklin, prior to the offenses in

this case, had been arrested for making terroristic threats against the officer. The officer testified that Franklin "hangs with known gang members that put out a hit on my life." Neither the state nor the officer requested that Franklin be excluded from Minneapolis as a condition of probation.

The sentencing judge asked Franklin where she was going to live after release. Franklin responded that she would be living with her sister in St. Paul. Following this exchange, the judge sentenced the offenses as gross misdemeanors, stating: "you [are to] have no further arrests, charges or convictions for assault, disorderly conduct, or trespassing. You are not to go to Bossen Terrace. In fact, at this point, unless something changes, you are not to be in the City of Minneapolis." As an exception to the Minneapolis exclusion, the judge stated that Franklin could come to Minneapolis with the permission of her probation officer for the purpose of getting a job, working, or attending school. The judge also imposed other conditions of probation, including that Franklin have no further assault, obstruction, or trespassing charges or convictions.

Approximately one week after Franklin's sentencing, the officer learned that Franklin was in Minneapolis attending church with her mother. The officer, who was off duty and at home, left her home in order to arrest Franklin. The officer arrested Franklin at church and returned her to jail. Three days later, on February 17, Franklin came before a judge other than the one who originally sentenced her. This judge modified the probation conditions to permit Franklin to attend her Minneapolis church, but ordered that all other conditions remain the same.

Franklin subsequently appeared before the sentencing judge and requested that the probation condition excluding her from Minneapolis be removed as unduly restrictive of her constitutional rights. Further, given that the sentencing judge indicated that she may be unwilling to continue with the modified probation condition which permitted Franklin to attend her Minneapolis church, Franklin's attorney specifically argued in the alternative that Franklin be allowed to attend her church. Franklin's attorney also informed the judge that the sister with whom Franklin had been living would soon be moving, most likely to Minneapolis. The attorney argued that as a consequence Franklin was likely to be homeless by April 1 because she did not know anyone else in St. Paul and her low-paying job at a shoe store did not enable her to pay rent without assistance from a friend or relative.

In response to Franklin's request for modification of the probation condition, the judge observed that Franklin's criminal activity had occurred in Minneapolis at her relatives' homes and stated that she wanted to see Franklin abide by some rules. The judge emphasized that Franklin was not allowed in Minneapolis except in specifically approved situations. While the judge granted a further exception from the probation condition to allow Franklin to visit her Minneapolis doctor, she stated that Franklin could attend church in St. Paul rather than in Minneapolis. In closing, the judge stated: "[Franklin] needs to make her own plan to stay out of trouble. And one of the ways she is going to stay out of trouble is not to live in Minneapolis."

Franklin appealed, arguing that the district court had abused its discretion by excluding her from Minneapolis. In an order opinion, the court of appeals affirmed the district court's sentence. The court of appeals stated that the district court "has great discretion in imposing conditions of probation" and "may impose a geographical exclusion if it is reasonably related to the purposes of sentencing and does not unduly restrict the probationer's liberty." *State v. Franklin,* No. C1–99–635, —— N.W.2d —— (Minn.App. May 11, 1999). The court of appeals observed that Franklin has six juvenile trespass offenses and had violated the "no trespass" order at Bossen Terrace, demonstrating that a nar-

rower geographical exclusion would not adequately serve sentencing purposes. *See id.* The court, after noting that probation conditions may incidentally encroach on probationers' constitutional rights, held that the probation condition was not an abuse of district court discretion. *See id.,* at ——. On appeal to our court, Franklin asserts that the court of appeals erred and again argues that the district court abused its discretion by excluding her from Minneapolis and by refusing to grant her an exception to attend her Minneapolis church.

■ When reviewing a sentence imposed or stayed by a district court, we do so under an abuse of discretion standard. *See State v. Ford,* 539 N.W.2d 214, 229 (Minn.1995). While this standard recognizes a district court's broad discretion in sentencing, "it is not a limitless grant of power to the [district] court." *State v. Warren,* 592 N.W.2d 440, 451 (Minn.1999). For example, Minn.Stat. § 244.11, subd. 2(b) (1998) states that an appellate court "may review the sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court." Following review of the sentence imposed or stayed, the reviewing court "may dismiss or affirm the appeal, vacate or set aside the sentence imposed or stayed and direct entry of an appropriate sentence or order further proceedings to be had as the court may direct." *Id.*

■ In circumstances like those presented in this case, a district court has discretion to stay imposition of a sentence and order probation with certain conditions. *See* Minn.Stat. § 609.135 (1998). In *State v. Friberg,* we held that such conditions "must be reasonably related to the purposes of sentencing and must not be unduly restrictive of the probationer's liberty or autonomy." 435 N.W.2d 509, 515 (Minn.1989). Although probationers, by virtue of their convictions, are subject to greater restrictions of their constitutional rights than are ordinary citizens, a district court's discretion in establishing probation conditions is "reviewed carefully" when a condition restricts fundamental rights. *See id.* at 516.

■ Geographical limitations may be imposed as a probation condition, *see id.* (citing ABA Standards for Criminal Justice 18–2.3(f) (1980)), but the condition must be reasonably related to the purposes of probation. *See Friberg,* 435 N.W.2d at 515. We previously addressed the specific issue of probation conditioned on geographical exclusion in two cases. In *State ex rel. Halverson v. Young,* the district court granted probation on the condition that Young never return to Minnesota. 278 Minn. 381, 382, 154 N.W.2d 699, 700 (1967). Prior to sentencing, Young had informed the court that if probation was ordered he would leave the state because he believed that his difficulties had grown out of bad associations in Minnesota. *See id.* The court then ordered probation if Young left that state and did not come back. *See id.* at 383, 154 N.W.2d at 701. A few months later, the court revoked Young's probation after he voluntarily returned to Minnesota. *See id.* On appeal, we held that a condition requiring the probationer to leave the state and never come back was "beyond the power of a court." *Id.* at 385, 154 N.W.2d at 702. In holding the probation condition void, we reasoned that the condition was "contrary to public policy" and "repugnant to the underlying policy of the probation law, which is to rehabilitate offenders without compromising the public safety." *Id.*

We more recently addressed this issue in *Friberg* where the defendants, who had been convicted of trespass, were sentenced to probation on the condition that, for one year, they stay 500 feet away from the medical clinic where they had trespassed. *See Friberg,* 435 N.W.2d at 510–12. The defendants appealed to this court, arguing that the probation condition unduly in-

fringed on their First Amendment rights. *See id.* at 515. In determining whether the geographical exclusion was reasonably related to probation purposes, we stated that as part of our analysis we would consider the following factors: 1) the purpose sought to be served by probation, 2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers, and 3) the legitimate needs of law enforcement. *See id.* We then held the probation condition in *Friberg* valid, reasoning that the geographical exclusion was not unduly restrictive because it was for a limited time and did not prevent the defendants from participating in other protests or prohibit all related protest speech. *See id.*

Both *Young* and *Friberg* address probation conditioned on geographical exclusion and provide a framework for resolving the issue before us. An outline of that framework is helpful to our analysis. *Young,* in addition to establishing the general purposes of probation, holds that it is beyond the power of a court to impose a condition requiring that the probationer leave the state and never come back. *See Young,* 278 Minn. at 385, 154 N.W.2d at 702. *Young* further stated that such a condition is void and cannot be used to revoke probation. *See id. Friberg* stated that probationers do not entirely give up their constitutional rights and that probation conditions "must be reasonably related to the purposes of sentencing and must not be unduly restrictive of the probationer's liberty or autonomy." *Friberg,* 435 N.W.2d at 515. *Friberg* further stated that when a probation condition restricts fundamental rights, it will be "reviewed carefully." *Id.* at 516.

■ Franklin argues that the probation condition excluding her from Minneapolis is overbroad in its impact on her constitutional rights of travel, association, and religion. She asks that the condition be removed on the grounds that the district court erred by imposing an unconstitutional condition. In the alternative, Franklin

argues that at a minimum the court abused its discretion by failing to grant an exception to allow her to attend her church in Minneapolis.

■ *As we begin our review, it is important to note that the district court record is not well developed regarding the reasons why the court deemed it necessary to impose this condition.* It appears that the court was concerned about Franklin's failure to obey earlier orders that she stay away from Bossen Terrace. While we in no way suggest that a sentencing judge must explain at length every probation condition she deems appropriate, probation conditions must be recited with sufficient particularity to provide an adequate basis for review. This is especially true when, as in this case, the condition imposed is a geographical restriction that may infringe on fundamental rights. Because the record before us is vague and unsatisfactory, our insight into the reasons why the court imposed this particular geographical exclusion is limited. It is in this context that we address the validity of the probation condition imposed on Franklin.

In this case, the sentencing judge observed that much of Franklin's criminal behavior occurred at her relatives' homes, expressed a desire that Franklin establish distance from her family, and identified Bossen Terrace as a problem site for Franklin. In fact, Bossen Terrace was the only problem site specifically identified by the judge. Based on this limited record, Franklin's exclusion from all of Minneapolis does not appear to be reasonably related to the goals expressed by the judge. Minneapolis is a large metropolitan city encompassing more than 58 square miles. The Bossen Terrace Apartments are located very near the city's southern border; consequently, Franklin could be mere blocks away from Bossen Terrace, yet be in compliance with the contested probation condition. Conversely, Franklin could be miles away from Bossen Terrace in another part of Minneapolis and be violating the condition. If

the judge determined that maintaining distance between Franklin and Bossen Terrace would foster Franklin's rehabilitation and preserve public safety, the exclusion from Minneapolis does not necessarily accomplish that purpose.

Besides rehabilitation, probation is intended to preserve public safety. It appears that this was the reason the district court specifically conditioned probation on Franklin's not having any further assault, obstruction, or trespassing charges or convictions. It is less clear that the condition excluding Franklin from the city where her victim resides and works as a police officer is specifically related to preserving public safety. We do know that Franklin had previously exhibited an unwillingness to abide by "no contact" orders. Further, the officer whom Franklin assaulted testified that Franklin had previously been arrested for terroristic threats against the officer and that Franklin associates with gang members who "put a hit out" on the officer. But it is not clear whether or to what extent the sentencing judge considered these factors. Because the record is silent in this regard, it is not clear that making Franklin's probation restrictions broader by excluding her from Minneapolis was related to the purpose of preserving public safety. Thus, it is difficult or impossible to subject the court's reasoning to careful review.

Geographical exclusions like the one here are not presumptively invalid, but, when we juxtapose Franklin's exclusion from Minneapolis with the general purposes of probation, we conclude that this exclusion is invalid. Given the contested condition's potential infringement on Franklin's fundamental rights and the paucity of support for that infringement in the record, we conclude that an insufficient nexus exists between the exclusion from Minneapolis and Franklin's rehabilitation or the preservation of public safety. Accordingly, we hold that the district court abused its discretion when it excluded Franklin from the entire city of Minne-

apolis as a condition of her probation. In making this holding, we do not seek to discourage district courts from finding creative and effective means for achieving the goals of probation. However, when such means have a potential impact on the probationer's fundamental rights, the sentencing court must establish a record that is capable of being "reviewed carefully" by an appellate court.

Because we have determined that the geographical exclusion imposed as a probation condition is not supported by the record and therefore is not reasonably related to the general purposes of probation, it is unnecessary to address the constitutional arguments made by Franklin. Likewise, there is no need to reach the narrower issue of whether Franklin should be allowed to attend her Minneapolis church as an exception to that condition.

Reversed and remanded.