*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0443**

State of Minnesota,
Respondent,

vs.

Stanley Allen Brown, Jr.,
Appellant.

**Filed January 11, 2016
Affirmed in part and remanded
Rodenberg, Judge**

Steele County District Court
File No. 74-CR-13-2200

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Owatonna, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from his conviction of second-degree criminal sexual conduct, appellant Stanley Allen Brown, Jr. argues that the district court abused its discretion by denying his motion to withdraw his *Norgaard* plea of guilty, and that it improperly

imposed consecutive sentences based on an incorrect criminal history score. We affirm the district court's denial of appellant's motion to withdraw his guilty plea. But because the district court erred in using an incorrect criminal history score in consecutively sentencing appellant, we remand for resentencing.

**FACTS**

On November 13, 2013, appellant was charged with one count of first-degree criminal sexual conduct against a six-year old child. The victim told her mother and an advocate from the Midwest Children's Resource Center that appellant "was drunk and he just got on top of me and pulled his pants down," and that he said "shhh! shhh! shhh!" in response to her screaming. The victim identified a penis as a "bat wing," stated that appellant had inserted his "bat wing" into her "one time."

At his November 13 arraignment hearing, and after being advised of his right to remain silent, appellant attempted to plead guilty as follows:

> APPELLANT: Your Honor, I want to—I want to just go ahead and plead guilty because I—
> DISTRICT COURT: Okay, Sir. I'm going to stop you there—
> APPELLANT: I—
> DISTRICT COURT: I want you to talk to an attorney and then we can get you back into court—
> APPELLANT: No. I just—
> DISTRICT COURT: —very quickly.
> APPELLANT: —let's just get this started because I can't—it's not good. This is not a good thing I did.

The district court redirected appellant and appointed counsel for him.

Defense counsel later negotiated a plea agreement with the prosecutor, and a plea hearing was held on July 7, 2014. After questioning appellant concerning the waiver of

2

his trial rights and the elements of the offense, the district court questioned him about the offense. Appellant admitted that he had a significant relationship with the six-year-old victim. When appellant claimed that he did not know what he did on the date of the offense, the district court asked defense counsel to inquire. Appellant testified as follows under questioning by defense counsel and the prosecutor:

> By defense counsel:
> Q: [Appellant], you would agree that you were intoxicated that day; is that right?
> A: Yes.
> Q: And you would also agree that you were left alone with this child; is that correct?
> A: Yes.
> Q: And you and I have had many conversations about what happened and what you did—what happened after this child made a complaint against you; is that correct?
> A: Yes.
> Q: And you would agree that we have gone through certain evidence that the State would introduce against you; is that right?
> A: Yes.
> Q: And one of those things is the evidence of the statement that the child made to the police there after this happened, right?
> A: Yes.
> Q: And she indicated that you—she identified your penis as what she called a bat wing; is that correct?
> A: Yes. . . .
> Q: And there—you would agree that there would be evidence that would be admitted at trial that would talk about bleeding that she suffered; is that correct?
> A: Yeah.
> Q: And, also, that she indicated that it hurt when she went to pee, initially; is that correct?
> A: Yeah.
> Q: And we also went through a DNA profile that the State did after the Court issued a warrant for a sample of your DNA; is that right?
> A: Yes.

3

Q: And I went through that with you and the DNA person in our office whose name is Ms. Maxwell; do you remember that?

A: Yes.

Q: And Ms. Maxwell indicated to you that all of the—nearly all of the DNA there was a match; is that right?

A: Yes.

Q: And you had no idea of how your DNA would have gotten in that particular area on that little girl; is that correct?

A: Yes.

Q: And you would agree that that is not DNA that would ordinarily be in her vaginal area; is that correct?

A: Yes. . . .

Q: And [appellant], you feel that you have had enough time to talk to me; is that correct?

A: Yes.

Q: And you feel like we've had an opportunity to go through all of the evidence together; is that right?

A: Yes.

Q: And you would agree that while you may not remember everything, you have no reason to doubt what the child says happened, is that right?

A: Yes.

Q: And you believe that, in fact, you did the things to her that she said that you did to her?

A: Yes.

Q: And that's not because you were so intoxicated you didn't know what you were doing, you eventually realized what you were doing and that she was a child; is that correct?

A: Yeah. . . .

Q: . . . [O]ne of the things that we talked about in our discussions about the child's statement was is that you—you used some force and that was that she was screaming when you were doing this, or at least that's what she said; is that correct?

A: Yes.

Q: And she told the investigator and told the interviewer that you were saying, sh-sh-sh-sh, which meant, be quiet, when this was occurring; is that right?

A: Yeah.

    By the prosecutor:

Q: And you understand that . . . you're waiving any defense regarding intoxication, correct?

4

A: Yes.
Q: And you're accepting the plea proposal today because the State is willing to recommend less time in prison than you might have been with the first-degree charge?
A: Yes.
Q: And you believe that if you went to trial that there is a high likelihood that you would be convicted of at least a second degree, if not the first-degree charge?
A: Yes.

After appellant so testified, the prosecutor identified appellant's plea as "really a *Norgaard* plea." The prosecutor indicated his belief that the parties were willing to stipulate to the complaint "as forming a factual basis and with the other waiver that's been given it would be a *Norgaard* [p]lea." Appellant did not object. The district court determined that there was a sufficient factual basis to find appellant guilty of second-degree criminal sexual conduct.

Appellant moved to withdraw his guilty plea before sentencing, arguing that he should be permitted to withdraw his plea because (1) he was not given an opportunity to discuss the *Norgaard* plea with defense counsel and did not understand was it was, (2) he did not discuss the defense of voluntary intoxication with defense counsel, (3) he did not have a complete understanding of the DNA evidence to be used against him, (4) he was not provided with updated medical records and a CD with pictures of the victim prior to his plea, (5) his plea was entered based on leading questions, (6) the district court did not advise or ask him if he understood what a *Norgaard* plea was, and (7) an agreement that he would be able to visit with his mother at the jail was not followed. Appellant offered no affidavits, evidence, or testimony in support of his arguments. The state argued that appellant had validly waived his rights and entered a valid *Norgaard* plea of guilty. In

5

support of its argument that it would be prejudiced if appellant was allowed to withdraw his plea, the state submitted an affidavit from the victim's therapist stating that the victim would be re-traumatized if appellant was allowed to withdraw his plea. The state also noted that the jail visit between appellant and his mother was not part of the plea agreement and that it could be still arranged. The district court denied the plea-withdrawal motion.

The district court later sentenced appellant to the parties' agreed-upon term of 252 months in prison, with a 10-year conditional-release period, the sentence to run consecutive to sentences from earlier convictions. The district court used a criminal history score of five. This appeal followed.

## D E C I S I O N

### I. Plea Withdrawal

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). The rules of criminal procedure provide two bases upon which the district court may allow a plea of guilty to be withdrawn. Minn. R. Crim. P. 15.05. The first requires that the defendant present "proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." *Id.*, subd. 1. A manifest injustice occurs if a defendant's plea is not accurate, or is involuntary, or is not intelligently entered. *State v. Jumping Eagle*, 620 N.W.2d 42, 43 (Minn. 2000). Such a plea is not valid, and it would be a manifest injustice to allow an invalid plea to stand. *See id.* (citing Minn. R. Crim. P. 15.05, subd. 1). The second basis for plea withdrawal is the district court's determination, upon considering the

reasons for the motion and any prejudice to the prosecution, that "it is fair and just" to allow the withdrawal. Minn. R. Crim P. 15.05, subd. 2. A motion on this second basis must be made before sentencing. *Id.*

On appeal, appellant does not argue that plea withdrawal is necessary to correct a manifest injustice. We address only those issues raised and argued to us and that are shown by the record to have been presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Appellant argues only that allowing him to withdraw his plea would be fair and just.

The fair-and-just standard requires that the moving party show sufficient reasons to support plea withdrawal. *Raleigh*, 778 N.W.2d at 97. If that burden is met, the state has the burden of showing prejudice. *Id.* Although the fair and just standard "is less demanding than the manifest injustice standard, it does not allow a defendant to withdraw a guilty plea for simply any reason." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007) (quotation omitted). We review a district court's decision to deny a plea-withdrawal motion under the fair-and-just standard for an abuse of discretion, "reversing only in the rare case." *Raleigh*, 778 N.W.2d at 97 (quotation omitted).

### A.    Reasons to Support Plea Withdrawal

Appellant argues multiple bases for his plea-withdrawal request. We address each in turn.

#### 1.    Failure to Understand the Norgaard *Plea*

Appellant argues that he should be permitted to withdraw his plea because he did not understand the *Norgaard* plea. "A plea constitutes a *Norgaard* plea if the defendant

7

asserts an absence of memory on the essential elements of the offense but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction." *Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009), *review denied* (Minn. Apr. 21, 2009); *see State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 110 N.W.2d 867 (1961). The Minnesota Supreme Court has urged district courts to accept *Norgaard* pleas "with caution," making certain that the defendant understands his rights, as such a plea is not supported by the defendant's unequivocal admission of guilt. *State v. Ecker*, 524 N.W.2d 712, 716-17 (Minn. 1994).

Appellant claims that his plea was unintelligent because neither the district court nor his defense counsel explained the legal implications of a *Norgaard* plea. We note that a claim that a plea was not intelligently entered ordinarily falls under the manifest-injustice standard. *Jumping Eagle*, 620 N.W.2d at 43. "The purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983).

The record suggests that the parties did not initially contemplate a *Norgaard* plea. The district court unsuccessfully attempted to secure appellant's admission to facts constituting second-degree criminal sexual conduct. Taking over from the court, appellant's counsel elicited what the prosecutor characterized as a *Norgaard* plea based on appellant's claimed inability to remember the details of the offense. The district court accepted this unchallenged statement and indicated it would issue a written order to this effect.

In *Ecker*, the Minnesota Supreme Court stated, "we believe it is important for either counsel or the trial court to indicate explicitly on the record that the defendant is entering an *Alford*-type [including *Norgaard*] guilty plea. The defendant should be questioned directly regarding whether he or she understands the legal implications of such a plea." 524 N.W.2d at 717. However, the *Ecker* court upheld the *Norgaard* plea despite the lack of questioning regarding that defendant's understanding of the legal implications of a *Norgaard* plea. *Id.*

We are not persuaded that appellant's plea was unintelligent or that the district court erred in concluding that the fair-and-just standard requires plea withdrawal. Appellant waived his trial rights both in the plea petition and on the record. He apparently understood the rights that he was waiving. Appellant responded affirmatively to defense counsel's statement that "you would agree that while you may not remember everything, you have no reason to doubt what the child says happened, is that right?" Appellant's signed plea petition indicated that he was pleading guilty to an amended charge of second-degree criminal sexual conduct, and that he understood the agreed-upon sentence of 252 months. Appellant had discussed with counsel the possibility of entering a similar *Alford* plea, and the legal implications of such a plea. Importantly, appellant submitted no affidavit or other evidence explaining why he would have proceeded differently with a full understanding of the legal implications and consequences of a *Norgaard* plea. The district court neither legally erred nor abused its discretion in denying appellant's motion to withdraw his plea based on the claimed failure to understand the *Norgaard* plea.

9

## 2.    *Intoxication Defense*

Appellant argues that plea withdrawal should be allowed because his defense counsel did not explain the defenses of voluntary and involuntary intoxication.[1] Appellant's trial counsel admitted that he did not specifically discuss intoxication defenses with appellant before his plea because he did not believe such a defense to be viable.  First, appellant fails to distinguish *State v. Lindahl*, 309 N.W.2d 763, 766-67 (Minn. 1981) (holding that voluntary intoxication is not a defense to general-intent sex crimes).  Moreover, and during the plea colloquy, appellant agreed that he was "not so intoxicated that [he] didn't know what [he] was doing."  Similarly, appellant checked the box on the written plea petition indicating that he was not claiming that he "was so drunk or so under the influence of drugs or medicine that [he] did not know what [he] was doing at the time of the crime," and acknowledged that he was "waiving any defense regarding intoxication" by pleading guilty.  And appellant offered no evidence that an explanation of the intoxication defense would have caused him to reconsider his guilty plea.  The district court acted within its discretion in denying his motion to withdraw his plea on this basis.

## 3.    *Disclosure of Additional Evidence*

Appellant argues that he should be allowed to withdraw his guilty plea because, at the time of his plea, the state had not disclosed certain evidence, including a page of the

---

[1] Although appellant argues that his trial counsel erred in failing to explain both types of intoxication defenses, there is nothing in the record supporting an involuntary-intoxication defense.

victim's medical report, the video recording of the victim's interview, and a CD containing photographs.

In a felony criminal case, the state must disclose any evidence within its possession or control that "tends to negate or reduce the defendant's guilt." Minn. R. Crim. P. 9.01, subd. 1(6). A defendant may withdraw a guilty plea or obtain a new trial based upon newly discovered evidence if he proves:

> (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

*Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997).

Here, appellant does not allege that the evidence was unknown to him or his counsel at the time of his plea, nor does the record support that it could not have been discovered through diligent efforts. And importantly, appellant does not claim that any exculpatory evidence has been discovered since his plea. The district court acted within its discretion in denying his motion to withdraw his plea on this basis.

### 4. *Leading Questions*

Appellant argues that his guilty plea was improper because the factual basis was established through leading questions. The use of leading questions in *Norgaard* pleas is discouraged. *See Ecker*, 534 N.W.2d at 717 ("[W]e again discourage the use of leading questions to establish a factual basis. . . . The defendant should be encouraged to state in his or her own words why he or she is willing to plead guilty notwithstanding . . . a

11

claimed loss of memory"). But the failure to "elicit proper responses" does not automatically require plea withdrawal if the record "contains sufficient evidence to support the conviction." *Raleigh*, 778 N.W.2d at 94. To determine whether the record contains sufficient evidence to support the conviction, we may consider the plea petition, the plea colloquy, and any other evidence in the record. *Lussier v. State*, 821 N.W.2d 581, 588-89 (Minn. 2012).

Appellant does not argue that there was an inadequate factual basis for his plea, and the record would support no such claim. He admitted that he had a significant relationship with the six-year-old victim, and he admitted that he had no reason to doubt the veracity of the victim's factual claims. In fact, he agreed under oath that he believed he did the things she said and admitted that his DNA was found in the victim's vaginal area.

Tellingly, appellant was prepared to admit his guilt at his arraignment. And at the plea hearing, he acknowledged that there was a "high likelihood" that the state would be able to convict him of first-degree or second-degree criminal sexual conduct. Therefore, and while the use of leading questions is discouraged, the record establishes a sufficient factual basis to support appellant's guilty plea.

### 5. DNA Evidence

Appellant argues that he should be permitted to withdraw his guilty plea because he did not adequately understand the DNA evidence in his case. The record belies appellant's assertion.

Appellant testified during the plea colloquy the he had discussed the DNA evidence with his attorney and the "DNA person," who indicated that "nearly all" of the DNA found in the victim's vaginal area was a match to appellant. At the November 20 motion hearing, defense counsel stated that he and the "DNA person" had explained to appellant the probabilities regarding the DNA evidence, the likely impact of the DNA report at trial, and that "the discussion that was had with him is while this is a sperm cell, it's not going to be easy to explain how this got where it was." Counsel at the motion hearing indicated that appellant had difficulty understanding that the DNA evidence found was "trace" evidence of his sperm. However, appellant does not explain on appeal how a more thorough understanding of "trace" evidence would have caused him to reconsider his plea, particularly in light of the factual basis established for his plea and his acknowledgement that the trace DNA evidence was of a sperm cell found in a six-year-old child's vaginal area. The district court acted within its discretion in denying appellant's motion to withdraw his guilty plea based on the claimed failure to understand DNA evidence.

6. *Visit with Mother*[2]

Appellant argues that his guilty plea was partially based on an agreement that he would be able to visit with his mother in jail. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *State v. Brown*, 606

---

[2] This argument was presented to the district court at the November 20 motion hearing, but the district court did not address the issue in its written order.

13

N.W.2d 670, 674 (Minn. 2000) (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495 (1971)). "When a guilty plea is induced by unfulfilled or unfulfillable promises, the voluntariness of the plea is drawn into question." *State v. Wukawitz*, 662 N.W.2d 517, 526 (Minn. 2003). An agreement that a prosecutor will make "good-faith efforts" to "facilitate" family visits that is not a part of the plea does not constitute a promise rendering a guilty plea involuntary. *Butala v. State*, 664 N.W.2d 333, 339 (Minn. 2003).

Here, the plea agreement is silent regarding such a visit, and appellant acknowledged in his plea that he had not been promised anything other than the agreement described to the district court. While the state agreed that there had been some discussions about a visit, it maintains that this was not a part of the plea agreement. At the plea-withdrawal hearing, the state indicated that it had "made the contacts" to facilitate such a visit, but that the idea of a visit had been deferred pending appellant's motion. Because the visit was not part of the plea agreement and appellant provides no evidence that an agreed-upon visit was actually denied, the district court acted within its discretion in denying appellant's motion to withdraw his guilty plea despite appellant not having had a jail visit with his mother.

### B.      *Prejudice to the State*

Appellant challenges the district court's conclusion that withdrawal of his guilty plea would prejudice the state. A district court must consider "any prejudice" to the state if it were to grant a defendant's motion to withdraw a guilty plea. Minn. R. Crim. P. 15.05, subd. 2. However, if the defendant fails to advance valid reasons why withdrawal

14

is fair and just, a district court may deny plea withdrawal even if the state is not prejudiced. *See Raleigh*, 778 N.W.2d at 97-98 (Minn. 2010) (holding that a district court did not abuse its discretion in denying plea withdrawal under the fair-and-just standard when "the prejudice to the [s]tate was overstated" but the defendant "failed to provide any valid reason why withdrawal would be 'fair and just'").

Here, the district court concluded that the state demonstrated substantial prejudice based on an affidavit of the victim's therapist stating that the victim had suffered "significant trauma and stress due to the crime" and would be "re-traumatized if [appellant] were allowed to withdraw his guilty plea as at this point [she] believes the case is over." Caselaw permits "interests of the victim" to be considered in weighing prejudice. *Kim v. State*, 434 N.W.2d 263, 267 (Minn. 1989). The district court acted within its discretion in considering prejudice to the state as a factor in denying the plea-withdrawal motion.

In sum, and considering the entire context of appellant's guilty plea and the strong factual basis supporting that plea, appellant fails to demonstrate that the district court abused its discretion in denying his motion to withdraw his *Norgaard* plea of guilty.

## II.    Sentencing

Appellant argues that the district court erred by using a criminal history score of five to sentence him to 252 months in prison for the second-degree criminal sexual conduct charge, to run consecutive to 15-month and 17-month consecutive sentences for

15

two prior convictions for felony fourth-degree assault.[3]  He argues that the district court was required to use a criminal history of zero in sentencing him consecutively, and that a 90-month sentence should be imposed.

The state agrees that the district court erred by using a criminal history score of five to impose the consecutive 252-month sentence.  But the state argues that we should remand for resentencing because the sentencing error does not necessitate correction to a 90-month sentence.[4]

We may review a "sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court."  Minn. Stat. § 244.11, subd. 2(b) (2014).  A district court's decision to depart from the sentencing guidelines' presumptive sentence is reviewed for an abuse of discretion.  *State v. Franklin*, 604 N.W.2d 79, 82 (Minn. 2000).  "Statutory construction and interpretation of the sentencing guidelines are subject to de novo review."  *State v. Johnson*, 770 N.W.2d 564, 565 (Minn. App. 2009).

Consecutive sentences are permissive when sentencing felony convictions for first-degree criminal sexual conduct and fourth-degree assault.  Minn. Sent. Guidelines 2.F.2.a.1.i.a (2013).  The sentencing guidelines provide that, for any permissive consecutive sentence, "the zero criminal history column, or the mandatory minimum,

---

[3] Appellant does not challenge those earlier consecutive sentences.

[4] Appellant does not challenge the imposition of a 48-month concurrent sentence for a separate prior conviction, and we therefore do not address that portion of the district court's order.

whichever is longer," shall be used in determining the presumptive duration. "The purpose of this procedure is to count an offender's criminal history score only one time in the computation of consecutive sentence durations." *Id.* cmt. 2.F.202. In making appellant's sentence consecutive to earlier sentences, the district court erred in not using a criminal-history score of zero.

The district court's error in using the incorrect criminal-history score requires a remand for resentencing. It remains for the district court to determine the proper sentence on remand. *See State v. Nunn*, 411 N.W.2d 214, 216 (Minn. App. 1987) (stating that, on remand, the district court was "free to resentence . . . so long as the newly imposed sentences were authorized by law and did not exceed the original . . . sentence").

**Affirmed in part and remanded.**