*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0074**

State of Minnesota,
Respondent,

vs.

Timothy Ivan Kotten,
Appellant.

**Filed June 27, 2016
Affirmed
Rodenberg, Judge**

Brown County District Court
File No. 08-CR-13-260

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Charles W. Hanson, Brown County Attorney, Paul Gunderson, Assistant County Attorney, New Ulm, Minnesota (for respondent)

Timothy Ivan Kotten, Sleepy Eye, Minnesota (pro se appellant)

Considered and decided by Peterson, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from an order revoking an agreed-upon stay of adjudication, resentencing appellant to a stay of imposition, and imposing intermediate sanctions, appellant Timothy Ivan Kotten argues that the record does not support the district court's

revocation of his stay of adjudication. He argues, among other claims, that the required sex-offender treatment included a polygraph requirement, violating his Fifth Amendment privilege against self-incrimination. Because the district court acted within its discretion in determining that appellant violated the conditions of his stay of adjudication, sentencing appellant to a stay of imposition, and imposing intermediate sanctions, we affirm.

## FACTS

In October 2013, appellant pleaded guilty to felony electronic solicitation of a child. By agreement, adjudication was stayed, and appellant was placed on probation for three years. Conditions of the stay of adjudication included the requirement that appellant successfully complete outpatient sex-offender treatment as directed and follow all recommendations.

In October 2014, a probation violation report was filed, alleging that appellant had been terminated from the CORE Professional Services (CORE) sex-offender treatment program. CORE discharged appellant for failing to make adequate progress. His deficiencies in progressing included having unauthorized contact with a minor male, having prohibited Internet access, and failing to be "open and honest" about his past offending behaviors. This violation was resolved when appellant agreed to reenroll in CORE, and to restrict his Internet use to public settings.

In March 2015, appellant was again terminated from CORE for failing to make progress in treatment and for viewing sexually-explicit material on his cellular phone. No probation violation report was filed at that time, because appellant signed an amended

2

probation agreement stating that he would enter a different treatment program. Although appellant attended his initial appointment with Turning Point Psychological Services (Turning Point), he cancelled his follow-up appointment and indicated that he was no longer interested in pursuing treatment. In June 2015, appellant's probation agent filed a probation violation report based on appellant's failure to complete sex-offender treatment as directed. Appellant denied the violation, and a contested probation violation hearing was held.

Appellant's supervising agent testified that she had reviewed the conditions of probation with appellant on several occasions and stated that she would have to report a probation violation if he did not continue in treatment. She also testified that appellant refused to enter treatment because Turning Point wanted him to submit to a polygraph test that he did not believe he could pass. The agent recommended revoking appellant's stay of adjudication and reinstating appellant to probation under a stay of imposition, with an intermediate sanction of 30 days in jail. The agent opined that, under the circumstances, maintaining the stay of adjudication would unduly depreciate the seriousness of appellant's violation because appellant had been given numerous opportunities to follow the probation requirements and treatment was important for public safety.

At the violation hearing, appellant's counsel cross-examined the probation agent concerning both the March 2015 allegation that appellant had accessed sexually-explicit material and the potential use of the polygraph-examination results by law enforcement. The agent admitted that all DOC-approved sex-offender treatment options require

3

polygraph examinations to understand the individual's sexual history and offenses and to ensure that the individuals are not currently offending or placing themselves in high-risk situations. She testified that it was possible that treatment providers could report criminal conduct to law enforcement if a polygraph examination provided sufficient information to warrant such a report. The agent testified that she had never heard of any law-enforcement investigations initiated by polygraph results generated through a treatment program.

Appellant testified that he chose not to attend Turning Point because he felt that the initial interview was "very abusive," the program "required [him] to waive [his] Fifth Amendment right against self-incrimination," and polygraph examinations were inaccurate. He admitted that he was not then enrolled in any sex-offender treatment program.

The district court found that appellant had violated the conditions of his stay of adjudication and that the polygraph requirement did not violate appellant's privilege against self-incrimination. The district court revoked the stay of adjudication, adjudicated appellant guilty of the felony offense, stayed imposition of sentence, and ordered appellant to serve 30 days in jail, among other conditions of probation.[1] This appeal followed.

---

[1] The district court stayed the 30-day jail sentence while this appeal proceeded.

**D E C I S I O N**

**I.    Revocation of appellant's stay of adjudication was supported by clear-and-convincing evidence.**

Appellant argues that the district court abused its discretion by revoking his stay of adjudication and imposing intermediate sanctions as a condition of his reinstatement to probation under a stay of imposition.  He argues that the sex-offender treatment programs require him to submit to and pass polygraph examinations that violate his privilege against self-incrimination.

When a probationer violates a condition of probation, a district court may continue probation, revoke probation and impose the stayed sentence, or order intermediate sanctions.  Minn. Stat. § 609.14, subd. 3 (2014).  When a probation violation proceeding results in the imposition of intermediate sanctions, rather than in the revocation of probation and execution of a defendant's sentence, the *Austin* analysis does not apply.  *State v. Cottew*, 746 N.W.2d 632, 638 (Minn. 2008); *see also State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980) (holding that "before probation [is] revoked, the [district] court must (1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation").  Before imposing intermediate sanctions, the district court is only required to "determine whether there is clear and convincing evidence that a condition of probation has been violated."  *Cottew*, 746 N.W.2d at 638.

Here, the district court found that appellant had "clearly" violated a condition of his stay of adjudication by failing to participate in and complete sex-offender treatment.

5

The district court found that appellant's decision was intentional, and that not revoking the stay of adjudication would "unduly depreciate the seriousness of the violation." The district court reinstated appellant to probation under a stay of imposition of sentence.

The district court's findings are amply supported by the record. Appellant was required to successfully complete a group-based outpatient sex-offender treatment program as directed and follow all recommendations. Appellant was twice terminated from the CORE program, refused to continue treatment with Turning Point, and was not enrolled in a sex-offender treatment program at the time of the violation hearing. Appellant was told on numerous occasions that failing to successfully complete sex-offender treatment would result in a probation violation report. The record supports the district court's finding that appellant violated this probationary term.

Where a probationer violates the terms of probation as demonstrated by clear and convincing evidence, a district court may exercise its sound discretion to impose intermediate sanctions without the "three *Austin* findings." *Cottew*, 746 N.W.2d at 636-38. Here, the record supports the district court's finding of a violation of the terms of appellant's stay of adjudication. Moreover, appellant agrees that he has not re-enrolled in sex-offender treatment, and he refuses to do so. He claims that requiring him to attend a sex-offender treatment program that mandates that he submit to polygraph examination violates his constitutional privilege against self-incrimination.

Appellant's arguments concerning self-incrimination are unpersuasive. District courts have broad discretion in setting the terms and conditions of probation. *State v. Franklin*, 604 N.W.2d 79, 82 (Minn. 2000). Probation conditions "must be reasonably

6

related to the purposes of sentencing and must not be unduly restrictive of the probationer's liberty or autonomy." *Id.* (quoting *State v. Friberg*, 435 N.W.2d 509, 515 (Minn. 1989)). "Although they do not entirely give up their constitutional rights, the rights of probationers are properly subject to limitations from which ordinary persons are free. The discretion of the [district] court in establishing conditions of probation is reviewed carefully, however, when the conditions restrict fundamental rights." *Friberg*, 435 N.W.2d at 516 (quotation omitted). Whether a condition of probation violates the privilege against self-incrimination is a question of law that we review de novo. *State v. Kaquatosh*, 600 N.W.2d 153, 156 (Minn. App. 1999).

The Fifth Amendment to the United States Constitution provides in part that no person may be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege allows an individual to refuse to "'answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Johnson v. Fabian*, 735 N.W.2d 295, 299 (Minn. 2007) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984)). "In order for the [Fifth Amendment] privilege to apply, two distinct elements must be present—compulsion and incrimination. The privilege prohibits only statements that are compelled and that present a 'real and appreciable' risk of incrimination." *Johnson*, 735 N.W.2d at 299 (quoting *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 190, 124 S. Ct. 2451, 2460 (2004)). "An individual does not lose this privilege because he is convicted of a crime or is on probation." *Kaquatosh*, 600 N.W.2d at 157.

7

Here, appellant argues only that requiring him to complete a sex-offender treatment program with a polygraph component will violate his Fifth Amendment privilege. He identifies no questions put to him that he had declined to answer while asserting the Fifth Amendment privilege.

Minnesota law provides that polygraph testing is a permissible condition of probation for sex offenders on probation or conditional release. Minn. Stat. § 609.3456 (2014). Where, as here, sex-offender treatment is required as a condition of probation, it is axiomatic that the treatment program may contain a polygraph requirement specifically authorized by statute. Whether the polygraph results will be admissible in a later proceeding is a different question than whether testing can be required as a component of a sex offender's probation. *See State v. Nowacki*, ___ N.W.2d. ___, ___, 2016 WL 2945040, at *3 (Minn. App. May 23, 2016) (holding that, while a court may order a sex offender to submit to polygraph examinations to ensure compliance with the terms of probation, "the admission of polygraph test results as substantive evidence of a violation in probation-revocation proceedings is improper").

As noted, appellant points to no question asked of him in response to which he has asserted the privilege. He has not shown that he invoked the Fifth Amendment during a polygraph examination or that he was rejected from a treatment program for doing so. At this point, appellant refuses even to be in treatment. The record evidence shows that appellant was permitted to continue in the CORE program, despite failing two polygraph examinations, until he was discovered viewing sexually explicit materials on his cellular phone. Further, appellant could have requested immunity from the state to avoid

8

prosecution for any possible incriminating statements he might have been required to make during polygraph examinations. *See* Minn. Stat. § 609.09, subd. 2 (2014) (providing that the state may not use information directly or indirectly derived from testimony that incriminates an individual if the witness is required by law to give such testimony). Instead, appellant chooses to remain untreated despite clearly understanding the obligation (to which he agreed as part of the initial stay of adjudication) to enroll in sex-offender treatment. The conditions of appellant's stay of adjudication do not violate his constitutional rights.

The district court acted within its discretion by revoking the stay of adjudication and resentencing appellant to a stay of imposition with an intermediate sanction of 30 days in jail based on appellant's continuing refusal to enroll in sex-offender treatment.

## II. Appellant's ineffective-assistance-of-counsel claim fails.

Appellant claims that he received ineffective assistance of counsel at his probation-revocation hearing. To prevail on an ineffective-assistance-of-counsel claim, an appellant must "demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for his counsel's unprofessional error, the outcome would have been different." *Leake v. State*, 767 N.W.2d 5, 10 (Minn. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064-65 (1984)). Both prongs need not be analyzed if one is determinative. *Id.*

Appellant's claim fails because he fails to show how the outcome of the hearing would have been any different but for his counsel's performance. Much of appellant's

9

pro se brief relies on matters outside the record, which we do not consider. *See State v. Roby*, 463 N.W.2d 506, 508 (Minn. 1990).[2]

Appellant's counsel argued to the district court, as appellant argues on appeal, that forcing him to pass polygraph examinations for sex-offender treatment violates his constitutional right against self-incrimination. The district court properly rejected that argument. Appellant cannot establish that the outcome of his case would have been different but for his counsel's performance. His claim fails.

## III.    Appellant failed to raise his other arguments to the district court.

Finally, appellant cites to other evidence outside the record concerning many issues raised for the first time on appeal, including that: (1) his treatment provider lied about his progress and forced him to pay more after he admitted he went to casinos; (2) his probation officer improperly released private data and tampered with a witness; (3) the condition that he not be permitted to use a monitored computer was impermissibly restrictive and should not have been permitted by Minn. R. Crim. P. 27.04, subd. 3(2)(a), which prohibits modification of probationary terms if no violation is found; and (4) the district court "arbitrarily limited who [appellant could] socialize with" by restricting his contact to persons under the age of 18 rather than children under the age of 15. These arguments were not raised in the district court. Issues raised for the first time on appeal

---

[2] For example, appellant argues in his appellate brief that his lawyer told him that "he is not going to defend me, that isn't part of his job." The record contains no indication of any such statement by counsel. And appellant's pro se brief is replete with similar arguments wholly unsupported by citation to anything in the record.

are considered waived. *Roby*, 463 N.W.2d at 508. And the record as constituted would not support these additional arguments in any event.

Appellant also argues that the district court was biased. Appellant did not raise this argument to the district court. The issue of bias is forfeited if not properly presented to the district court. *Braith v. Fischer*, 632 N.W.2d 716, 724-25 (Minn. App. 2001) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)), *review denied* (Minn. Oct. 24, 2001). Even considering the claims of bias on their merits, this argument fails. Appellant's several unsuccessful attempts at sex-offender treatment and his other violations of the conditions of his agreed-upon stay of adjudication were followed by his defiant refusal to re-enroll in treatment. The district court carefully considered appellant's Fifth Amendment arguments and properly rejected them. Exercising its "conscientious judgment," the district court revoked the stay of adjudication, and reinstated appellant to probation under a stay of imposition. *Cottew*, 746 N.W.2d at 638 (quoting *Burns v. United States*, 287 U.S. 216, 222-23, 53 S. Ct. 154, 156 (1932)). The record does not support appellant's claim that the district court was biased. *See Braith*, 632 N.W.2d at 724-25.

**Affirmed.**