STATE of Minnesota, Respondent,

v.

Toyie Diane COTTEW, Appellant.

No. A06–785.

Supreme Court of Minnesota.

Jan. 31, 2008.

## OPINION

ANDERSON, G. BARRY, Justice.

This dispute raises the issue of whether the detailed findings required before probation is revoked are also required when intermediate sanctions [1] are imposed by a district court for probation violations.

1. Under Minnesota law, "the term 'intermediate sanctions' includes but is not limited to incarceration in a local jail or workhouse, home detention, electronic monitoring, intensive probation, sentencing to service, reporting to a day reporting center, chemical dependency or mental health treatment or counseling, restitution, fines, day-fines, community work service, work service in a restorative justice program, work in lieu of or to

After Toyie Diane Cottew admitted that she violated the conditions of her probation, the district court imposed local jail time as an intermediate sanction for the violation. In imposing this sanction, the district court identified the specific condition that was violated and found that the violation was intentional, but did not address whether the need for confinement outweighed the policies favoring probation as required under *State v. Austin,* 295 N.W.2d 246, 250 (Minn.1980), and *State v. Modtland,* 695 N.W.2d 602, 606 (Minn. 2005).

The court of appeals affirmed the imposition of local incarceration for the probation violation, holding that the *Austin/Modtland* analysis does not apply to the imposition of intermediate sanctions. *State v. Cottew,* 728 N.W.2d 268, 271–74 (Minn.App.2007). The court of appeals also construed the Minnesota Rules of Criminal Procedure to require the extension of the defendant's probation when intermediate sanctions are imposed, and modified the district court's order accordingly. *Id.* at 274.

We conclude that the *Austin/Modtland* analysis only applies to the revocation of probation and execution of the underlying sentence—not to the imposition of intermediate sanctions—for probation violations. We also conclude that the Rules of Criminal Procedure do not require that the district court extend a defendant's probation when imposing intermediate sanctions for a probation violation. Accordingly, we affirm in part and reverse in part.

On February 2, 2004, Toyie Diane Cottew pleaded guilty in Aitkin County District Court to one count of fourth-degree driving while impaired (DWI). Cottew was sentenced to 90 days in jail and or-

dered to pay a $1,000 fine and $565 in other fees. Execution of the 90–day jail sentence was stayed, however, and Cottew was placed on supervised probation for 2 years subject to the conditions that she follow the rules of probation, make monthly payments toward the fine and fees, complete a chemical use assessment, and attend a DWI clinic.

Cottew's probation agent filed a probation violation report with the district court on September 1, 2004, alleging that Cottew had violated the conditions of her probation by failing to make monthly fine payments, complete a chemical use assessment, attend a DWI clinic or MADD Victim Impact Panel, and report to her probation agent as directed. This violation report was subsequently dismissed.

Cottew's probation agent filed another violation report on January 3, 2006. According to this report, Cottew did not make several monthly fine payments, still owed $1,095 in fines and fees, and had failed to stay in contact with the probation agent. The report also noted that Cottew's probation was scheduled to expire on February 1. When the district court held a hearing on the probation violation on February 6, 2006, Cottew waived her right to representation and to a hearing and admitted that she had failed to pay her financial obligations and to report to her probation agent. Cottew stated, however, that she had paid all but $125 of the remaining fine and fees the day of the hearing. Based on the admitted violations, the court ordered "that 20 days of the remaining jail sentence be executed, and that [Cottew] report to the jail on February 26th." The court also ordered that Cottew's jail time would be reduced to 10 days if the remain-

---

work off fines and, with the victim's consent, work in lieu of or to work off restitution."

Minn.Stat. § 609.135, subd. 1(b) (2006).

ing $125 was paid before Cottew was required to report to jail.

On February 24, 2006, before the start of the scheduled jail sentence, an attorney representing Cottew asked the district court for a hearing to review the disposition from the February 6 hearing because the court failed to address the findings required by our *Modtland* decision. The court granted Cottew's request, scheduled a hearing for March 20, 2006, and deferred Cottew's jail sentence pending that hearing.

At the hearing, Cottew's attorney argued that the district court failed to inquire into whether the probation violations were intentional or inexcusable, and whether incarceration was the only way to address the violations. The court clarified its previous order, stating, "Well, I did not order that her sentence be executed. The sanction that was imposed was meant to be just that: A sanction for a violation. And not to be an executed sentence." Cottew's attorney explained that the fine and fees had not been paid earlier because Cottew was unemployed. The attorney asserted that the failure to pay was only a technical violation because Cottew had paid the vast majority of the fine and fees before the February hearing and paid the remainder 2 or 3 days later. Cottew's attorney also claimed that Cottew had tried to contact the probation agent, but her calls were not answered and telephone messages were not returned. The probation agent stated that Cottew had contacted her before the hearing, but not before the violation report was filed.

The district court clarified that the jail term imposed at the February hearing was "a sanction for failure to report to the probation department," not for failure to make the required fine payments, and that it "was more in the nature of reinstating [Cottew] on probation, with ten days being the sanction for the violation," rather than a revocation of the probation and execution of the sentence. The court also noted "that it's been the policy of this Court to routinely impose additional probationary jail time when a person fails to be in contact with the probation department," but that the length of that jail time varies with the circumstances of each case. Based on the mitigating circumstances presented by Cottew's attorney at the March hearing, the court decided that half of the 10–day sentence could be served on electronic home monitoring. The court ultimately concluded "that the violation was intentional" because the probation agent told Cottew that she needed to report, Cottew knew of that requirement, and Cottew failed to report to the agent before the violation report was filed with the court.

Looking to the policy considerations underlying our holding in *Austin,* the court of appeals concluded that the district court is not required to make *Austin* findings before imposing intermediate sanctions and therefore affirmed the district court's imposition of jail time. *Cottew,* 728 N.W.2d at 271–74. The court of appeals also concluded sua sponte that Minn. R.Crim. P. 27.04, subd. 3(3)(b), requires an extension of the probation term when an intermediate sanction is imposed after the original probation term has expired, and therefore modified the district court's order to extend Cottew's probation for the duration of the intermediate sanctions imposed by the district court. *Id.* at 274.

I.

Minnesota Rule of Criminal Procedure 27.04 governs probation revocation proceedings and sets out a detailed framework for handling violations. The process begins with a written report containing "a description of the surrounding facts and circumstances upon which the request for

revocation is based" that must be submitted to the district court. Minn. R.Crim. P. 27.04, subd. 1(1). If the court determines that the report "show[s] probable cause to believe that the probationer has violated any conditions of probation," the revocation proceedings are officially commenced with the issuance by the court of a summons or a warrant, either of which must be accompanied by a copy of the written violation report. *Id.*, subd. 1(1)-(2). At the probationer's first appearance, the court must advise the probationer "of the nature of the violation charged," give the probationer a copy of the written violation report if she has not already received that report, and advise the probationer, inter alia, of her rights to counsel and to have a hearing to challenge the violation. *Id.*, subd. 2(1).

When a probationer challenges the probation violation, the state must prove the violation by clear and convincing evidence. *Id.*, subd. 3(2). If the district court "finds that a violation of the conditions of probation has not been established by clear and convincing evidence," it must dismiss the proceedings and continue probation "under the conditions theretofore ordered by the court." *Id.* But if the court finds that there is clear and convincing evidence that the probationer violated a condition of probation, or if the probationer admits the alleged probation violation, the court may either (1) continue to stay execution or imposition of sentence under the previously stayed conditions or under modified conditions, or (2) revoke the defendant's probation and execute the previously stayed sentence. *Id.*, subd. 3(3).

▆▆▆ Revocation of probation, like revocation of parole, " 'deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [probation] restric-

tions.' " *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Due process requires that a defendant be given an opportunity to show that even if a condition of probation was violated, mitigating circumstances exist such that the violation does not warrant revocation. *Pearson v. State*, 308 Minn. 287, 289–90, 241 N.W.2d 490, 492 (Minn. 1976) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). A violation is mitigated where it was unintentional or excusable. *Bearden v. Georgia*, 461 U.S. 660, 668–69, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (holding that where a violation is committed "through no fault of [the defendant's] own," the court should "consider[ ] whether adequate alternative methods of punishing the defendant are available" before revoking the defendant's probation). Public policies favoring probation further limit revocation to those situations where " '(i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.' " *State v. Austin*, 295 N.W.2d 246, 250–51 (Minn. 1980) (quoting A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)).

▆▆▆ Consequently, before a district court revokes a defendant's probation, it must, in addition to designating the condition of probation it found was violated, "find that the violation was intentional or inexcusable" and "that need for confinement outweighs the policies favoring probation." *Id.* at 250. Although a district

court has broad discretion in determining whether there is sufficient evidence to revoke probation, it must make specific findings on all three *Austin* factors before revoking probation. *State v. Modtland,* 695 N.W.2d 602, 605–06 (Minn.2005).

## A.

■ Cottew argues that the three *Austin* findings are required when a district court orders "incarceration as a consequence [of] a probation violation." But this conclusion is not supported by our prior decisions.

The "threshold question" we decided in *Austin* was "what findings a trial court must make before *revoking probation*." *Austin,* 295 N.W.2d at 250 (emphasis added). Under the express terms of our holdings, the *Austin* findings are only required before a defendant's probation is revoked. *Modtland,* 695 N.W.2d at 606 (requiring the three findings "before probation is revoked"); *Austin,* 295 N.W.2d at 250 (requiring the three findings "before probation be revoked"); *cf. State v. B.Y.,* 659 N.W.2d 763, 768–69 (Minn.2003) (noting that "revocation of [Extended Jurisdiction Juvenile (EJJ)] probation may result in the execution of an adult sentence" and requiring that the *Austin* factors be considered before an EJJ sentence is revoked). The required *Austin* findings ensure that the district court has fully considered any claims by the defendant that revocation is not warranted because his probation violation was either unintentional or excusable, or because revocation would be inconsistent with the public policies favoring probation.

Although our definition of the third *Austin* finding considers the "need for confinement," *Modtland,* 695 N.W.2d at 606; *Austin,* 295 N.W.2d at 250, our subsequent description of the analysis required in relation to this finding clearly indicates that the "confinement" referred to is the imprisonment of the defendant following revocation of the defendant's probation and execution of the underlying sentence, not the imposition of confinement as an intermediate sanction. In *Austin,* for example, we noted that "[i]n some cases, policy considerations may require that probation not be *revoked* even though the facts may allow it." 295 N.W.2d at 250 (emphasis added); *see also Modtland,* 695 N.W.2d at 606. We also stated that "[t]he decision to *revoke* cannot be 'a reflexive reaction to an accumulation of technical violations' but requires a showing that the 'offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity.' " *Austin,* 295 N.W.2d at 251 (emphasis added) (quoting *United States v. Reed,* 573 F.2d 1020, 1024 (8th Cir.1978)). Thus, we conclude that our prior cases do not require the three *Austin* findings before the imposition of any incarceration as a consequence for a probation violation; rather, we have only required this analysis before a defendant's probation is revoked and the underlying sentence is executed.

Intermediate sanctions are imposed when the district court has determined that the defendant has violated his probation but that revocation of the defendant's probation and execution of the underlying sentence is not appropriate, at least in part, because rehabilitation is still possible. *See* Minn.Stat. § 609.14, subd. 3 (2006) (permitting the imposition of intermediate sanctions when a stayed sentence is continued following a probation violation). In this situation, there is no need for *Austin* findings to ensure that the district court considered any claims by a defendant that revocation is not warranted under the circumstances because the district court necessarily agrees that revocation is not warranted. Although the intermediate sanction serves as a punishment

for the probation violation, this punishment is not just an end in itself, but is also a means of advancing the defendant's rehabilitation. This is true even where the violation was unintentional or inexcusable. *See Bearden,* 461 U.S. at 668–69, 103 S.Ct. 2064 (holding that where a violation is committed "through no fault of [the defendant's] own," the court may consider "alternative methods of punishing the defendant" that do not involve revocation of the defendant's probation). In addition, as the court of appeals correctly recognized, "confinement as an intermediate sanction may provide a necessary incentive or 'wake-up call' to comply with a rehabilitative treatment or counseling regimen included in the probation conditions or to avoid antisocial activity and resume court-ordered conduct." *Cottew,* 728 N.W.2d at 272. Accordingly, we decline to extend the *Austin* analysis to the imposition of local incarceration as an intermediate sanction.

■ In concluding that the *Austin* analysis does not apply to the imposition of intermediate sanctions, however, we emphasize that the procedural safeguards contained in Rule 27.04 of the Minnesota Rules of Criminal Procedure apply to all probation violation proceedings, including those that result in the imposition of intermediate sanctions rather than the revocation of a defendant's probation and execution of the defendant's sentence. Thus, as discussed above, the defendant is entitled to receive a copy of the written violation report describing the circumstances of the violation and must be told which probation condition she is accused of violating. Minn. R.Crim. P. 27.04, subds. 1–2. The defendant is also entitled to a hearing at which the district court must determine whether there is clear and convincing evidence that a condition of probation has been violated. *Id.,* subd. 3. If a probation violation has been established, the court has broad discretion in determining whether to impose an intermediate sanction. But that discretion is not unlimited. This decision, like all exercises of judicial discretion, requires "conscientious judgment, not arbitrary action," *Burns v. United States,* 287 U.S. 216, 222–23, 53 S.Ct. 154, 77 L.Ed. 266 (1932), and the imposition of intermediate sanctions for probation violations will be reviewed to determine whether the district court abused its discretion.

## B.

■ Turning to the record of the present case, the district court initially ordered "that 20 days of [Cottew's] remaining jail sentence be executed." But at the March 20 hearing, the court clarified that the incarceration was intended to be "a sanction for failure to report to the probation department" and "in the nature of reinstating [Cottew] on probation" rather than an executed sentence. Based on this record, we conclude that the district court did not revoke Cottew's probation and execute her underlying sentence, and that the incarceration ordered in this case was instead an intermediate sanction for the probation violation. Therefore, we hold that the district court did not err in imposing the sanction without making the three *Austin* findings.

■ Cottew also argues that the district court abused its discretion by imposing the incarceration in this case because of its "consistent policy" of ordering jail as a sanction for failing to contact the probation agent, rather than basing its judgment on the unique facts and circumstances of this case. But the record of this case demonstrates that the court considered the mitigating circumstances presented by Cottew and adjusted its order to permit electronic home monitoring for half of the jail term based on those circumstances.

Based on this record, we hold that the district court did not abuse its discretion.

## II.

■ The court of appeals considered sua sponte whether "the district court imposed the intermediate sanctions in a manner authorized by Minn.Stat. § 609.135 (2004) and Minn. R.Crim. P. 27.04." *Cottew,* 728 N.W.2d at 273. Rule 27.04 provides that when the execution of a defendant's sentence is initially stayed but the defendant subsequently violates the conditions of her probation, "the [district] court may continue the stay and place the probationer on probation in accordance with the provisions of Minn.Stat. § 609.135, or order execution of the sentence previously imposed." [2] Minn. R.Crim. P. 27.04, subd. 3(3)(b). The court of appeals construed this language as requiring "the district court to *'place the probationer on probation'*" if the court continues the stay of the defendant's sentence. *Cottew,* 728 N.W.2d at 273 (quoting Minn. R.Crim. P. 27.04, subd. 3(3)(b)).

Minnesota Statutes section 609.135, subdivision 1(a) (2006), provides that the district court "may stay imposition or execution of sentence and: (1) may order intermediate sanctions without placing the defendant on probation; or (2) may place the defendant on probation with or without supervision and on the terms the court prescribes, including intermediate sanctions when practicable." According to the court of appeals, the requirement in Rule 27.04 that the district court place the probationer on probation when imposing intermediate sanctions for a probation violation conflicts with the permissive lan-

guage of Minn.Stat. § 609.135. *Cottew,* 728 N.W.2d at 273. Because it concluded that the statute is procedural rather than substantive, the court of appeals held that the statute "has no force or effect to the extent that it conflicts with the requirements of rule 27.04," and that the district court was therefore "required to place Cottew on probation when it imposed the intermediate sanctions." *Id.* at 273–74. Accordingly, the court of appeals "modif[ied] the district court's order to place Cottew on probation for the duration of the intermediate sanctions ordered by the district court." *Id.* at 274.

Whenever reasonable, we construe statutory provisions to avoid unnecessary conflict with other statutes. Minn.Stat. § 645.26, subd. 1 (2006); *State by Beaulieu v. Indep. Sch. Dist. No. 624,* 533 N.W.2d 393, 396 (Minn.1995); *Erickson v. Sunset Memorial Park Ass'n,* 259 Minn. 532, 543, 108 N.W.2d 434, 441 (1961). We see no reason why this basic principle of construction should not apply with equal force to the interpretation of court rules that may conflict with statutory provisions. In this case, the rule provides that "the [district] court may continue the stay *and* place the probationer on probation." Minn. R.Crim. P. 27.04, subd. 3(3)(b) (emphasis added). We agree with the court of appeals that this language could reasonably be interpreted to require that the district court place the probationer on probation when it decides to continue a stay. But the rule also provides that this action be done *"in accordance with* the provisions of Minn.Stat. § 609.135." *Id.* Rather than evincing an intent to supersede section 609.135, rule 27.04 thus expressly subordinates itself to the provisions of the

**2.** Similarly, when imposition of the defendant's sentence is initially stayed, Rule 27.04 provides that "the court may again stay imposition of sentence or impose sentence and stay execution thereof, and in either event place

the probationer on probation pursuant to Minn.Stat. § 609.135, or impose sentence and order the execution thereof." Minn. R.Crim. P. 27.04, subd. 3(3)(a).

statute. Therefore, we conclude that the rule must be construed to permit the district court to continue a probationer's stay and place her on probation in any manner authorized by the statute. And because section 609.135 expressly authorizes the district court to impose intermediate sanctions with or without placing the defendant on probation, we conclude that a district court is not required to impose probation in connection with the imposition of intermediate sanctions for a probation violation.

Based on our reading of the record, it appears that the district court did extend Cottew's probation for the duration of the local incarceration it imposed. We hold that such an extension is permitted, but is not required, by rule 27.04 of the Minnesota Rules of Criminal Procedure. Thus, to the extent that the court of appeals modified the district court's order, we reverse the court of appeals and reinstate the district court's order.

Affirmed in part and reversed in part.