*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0332**

State of Minnesota,
Respondent,

vs.

Tremayne Anthony Miller,
Appellant.

**Filed November 9, 2015**
**Affirmed**
**Cleary, Chief Judge**

Stearns County District Court
File No. 73-CR-11-5408

Lori Swanson, Attorney General, St. Paul, Minnesota;

Janelle P. Kendall, Stearns County Attorney, St. Cloud, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, Minnesota County Attorneys Association, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hooten, Presiding Judge; Cleary, Chief Judge; and Halbrooks, Judge.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant argues that the district court abused its discretion when it revoked his probation because the violations were not intentional or inexcusable and the evidence did not establish that the need for confinement outweighed the policies favoring probation. Because the district court did not abuse its discretion in revoking appellant's probation, we affirm.

## FACTS

On February 23, 2012, appellant Tremayne Anthony Miller pleaded guilty to one count of Driving While Intoxicated (DWI) – refusal to take a chemical test, in violation of Minn. Stat. § 169A.20, subd. 2 (2010). The district court sentenced appellant to a 64-month prison term, stayed for seven years during which appellant would serve probation. The conditions of appellant's probation included paying restitution, completing chemical dependency programs, abstaining from all mood-altering chemicals, 30 days of consecutive alcohol monitoring each of the seven years, remaining law-abiding, completing an intensive supervision program, and other conditions. The court also sentenced appellant to serve two staggered jail terms, beginning January 1, 2013 and January 1, 2014, which could be suspended based on the recommendation of the supervising probation officer.

Based on appellant's good performance on the conditions of his probation, the district court suspended appellant's first staggered term on the recommendation of the

probation officer. Appellant continued to fulfill probation conditions until October 2013 when he was first terminated from his required alcohol treatment aftercare program for failure to attend. Appellant restarted aftercare in December 2013 but was again terminated for failure to attend on January 21, 2014. On January 1, 2014, appellant failed to report for his final staggered jail term. On January 2, appellant went to Hennepin County Government Center and had his alcohol-tracking bracelet removed. The state argued that appellant missed a meeting with his probation officer that day, but appellant claimed that he was never told of any meeting that day beyond the removal of his alcohol-tracking bracelet. Following these violations, the probation officer filed a violations report recommending probation be revoked and appellant's sentence be executed.

At the November 25, 2014 revocation hearing, the state alleged appellant committed three probation violations. Appellant admitted two of these violations: that he did not complete aftercare treatment and that he failed to report to jail for his required term. The district court accepted appellant's admissions of these two violations and found the state proved the third violation, that appellant had failed to maintain contact with probation staff by missing an appointment, by clear and convincing evidence.

The district court found that "the violations were intentional or inexcusable" because appellant "hadn't exercised any amount of diligence in maintaining contact with his agent with regard to these probation violations." It also found that the violations necessitated the revocation of appellant's probation and executed his 64-month sentence.

This appeal followed.

**D E C I S I O N**

When a probationer violates a condition of probation, the district court may continue probation, revoke probation and execute the stayed sentence, or order intermediate sanctions. Minn. Stat. § 609.14, subd. 3 (2014). The district court must make three findings on the record before revoking probation. *State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2005). The court "must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that the need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). These required findings are designed to ensure that revocation is not "a reflexive reaction to an accumulation of technical violations" but rather is based on "a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotations omitted). When a district court makes these findings, it "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249-50. Appellant argues that the district court abused its discretion in concluding that the second and third *Austin* factors had been satisfied.

I.    **Second *Austin* Factor**

Appellant argues that this failure to complete aftercare was unintentional and excusable. He attributes his failure to attend, and eventual termination from the program,

4

to stress and emotional struggles. Appellant's grandmother and brother had been hospitalized and visiting family interfered with attending aftercare. Additionally, these family health problems affected appellant's own mental health and appellant stated that depression led to him "shutting down emotionally and mentally and physically." He argues the court abused its discretion in finding that his failure to attend the aftercare program was intentional or inexcusable.

As to this first probation violation, the district court considered both appellant's failure to complete the aftercare program and his failure to maintain contact with probation officers after missing sessions. Appellant was twice terminated from aftercare for failure to attend. A Hennepin County Department of Community Corrections and Rehabilitation report stated that he had "not been honest with his probation officer" regarding his absences from treatment. The district court considered the mental and familial stress appellant was experiencing, but concluded that it did not make his failure to complete aftercare excusable. This finding is supported by the record and was not an abuse of discretion.

Next, appellant argues that his failure to attend a January 2, 2014 probation meeting and his failure to report for his jail term on January 1 were unintentional and excusable violations. He claims that he never received notice of either the meeting or the need to report for the jail term. Appellant also argues that the lack of clarity of his conditions led him to reasonably misunderstand his probation responsibilities, making these violations excusable.

Appellant's previous January 1, 2013 jail term had been suspended and he argues that both he and probation staff acted in ways consistent with the January 1, 2014 term being suspended. According to the state, appellant was scheduled to have his alcohol-tracking bracelet removed and have a meeting with a probation officer on January 2. These obligations could be understood as inconsistent with the requirement that appellant report for the jail term on January 1. After the appointment, an "officer called the defendant on January 3, 2014 and told him to call [his assigned probation officer] on Monday January 6, 2014 to address his missed [appointment]." The call did not address appellant's failure to report for his jail term. Although he was sent a notification of the jail term, appellant no longer lived at the address it was sent to and stated that he never received it. Appellant believed he was in compliance with his probation as of January 1, and argues that because he did not receive notice to report for the jail term, his failure to report was excusable.

However, the district court rejected appellant's assertions, concluding that he could not reasonably have believed his jail term was suspended and, moreover, he had received notice to report unless instructed otherwise. The court stated:

> I don't think it's plausible to say I thought I wouldn't have to go to jail even though you knew you weren't going to aftercare, even if you weren't discharged until two weeks after or three weeks after you were supposed to report for that last staggered sentence. I feel that my order was very, very clear that the jail staggered sentences would need to be executed unless they were waived. . . .

The court emphasized that it stated at sentencing, both orally and in writing, that the jail terms must be served unless they were suspended. Additionally, the district court noted appellant's failure to maintain contact with probation officers following the violations.

Appellant was sentenced to serve a jail term that was required unless it was suspended. The term was not suspended and he failed to report, violating his probation. The district court had grounds for finding the violation was intentional or inexcusable and stated those grounds. We review this decision only for a clear abuse of discretion. The court did not abuse its discretion in finding that the second *Austin* factor was satisfied as to these violations.

## II.    Third *Austin* Factor

"The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Austin*, 295 N.W.2d at 250. Before revoking probation and executing a prison sentence, a district court must find that the need for confinement outweighs the policies favoring probation. *Id.* In assessing this third *Austin* factor, courts are to consider whether

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Modtland*, 695 N.W.2d at 607 (citing *Austin*, 295 N.W.2d at 251). Even when a court finds intentional or inexcusable violations have occurred, public policy favors revocation

only where at least one of these three subfactors supports execution of a prison sentence. *State v. Cottew*, 746 N.W.2d 632, 636 (Minn. 2008).

Appellant makes two arguments in support of his claim that the district court abused its discretion in finding that the need for confinement outweighed the policies favoring probation. First, appellant argues that based on his actions, the district court had correctional options other than executing the sentence, and declining these other options was an abuse of discretion. Appellant highlights his successful compliance with probation conditions for nearly two years, including maintaining sobriety, paying restitution, and completion of inpatient alcohol treatment. Because of these factors, he argues, "the current violations did not make appellant a danger to public safety."

At the revocation hearing, the district court stated that all three *Modtland* subfactors supported confinement. The district court stated that confinement was necessary "to protect the public from further criminal activity." It also found that appellant's "need for the correctional treatment and the aftercare can most effectively be provided while he is in custody," because appellant had been unable to properly commit his time to treatment while on probation. Last, the court found that continued probation "would unduly depreciate the seriousness of the violation and the prior sentence."

Although the court could have provided greater discussion of its reasoning, it discussed some specific facts supporting these findings. The court explained how "other people . . . demanding his time" had led to appellant's violations, and reasoned that correctional treatment could be better provided in custody without those distractions. It

emphasized that appellant failed to maintain contact with probation officers during and after the violations. Further, a court may conclude that the policies favor revoking probation where only one of these subfactors supports that decision. *Cottew*, 746 N.W.2d at 636 (stating that public policy limits revocation to situations where *Modtland* subfactor (i), (ii), or (iii) is present). Here the district court found all three. A court has broad discretion in determining whether there is sufficient evidence to revoke probation. *Austin*, 295 N.W.2d at 249. These findings and the record that supports them are sufficient to demonstrate that the district court did not abuse its discretion in finding the third *Austin* factor required confinement.

Next, appellant argues that the district court abused its discretion by improperly applying a "lower threshold for revocation" because appellant received a dispositional departure at sentencing. A district court may consider a dispositional departure as relevant to, but not determinate of, a revocation decision. *State v. Fleming*, __ N.W.2d __, __, 2015 WL 5197944, at *10 (Minn. App. 2015), *pet. for review filed* (Minn. Oct. 8, 2015). The supreme court has held that in making a revocation decision, "[l]ess judicial forbearance is urged for persons violating conditions of a stayed sentence who were convicted of a more severe offense or who had a longer criminal history." *State v. Osborne*, 732 N.W.2d 249, 254 (Minn. 2007) (quoting Minn. Sent. Guidelines III.B. (2006)).

At the revocation hearing, the district court referenced the dispositional departure twice. The court stated it was "saddened" to be dealing with appellant's violations two

and a half years after the dispositional departure and noted the earlier departure in support of its finding that continued probation "would unduly depreciate the seriousness of the violation and the prior sentence." Appellant's serious crime and criminal history led to a 64-month underlying sentence, meaning he was due lesser judicial forbearance. The court's finding on the third *Austin* factor was not a reflexive reaction to any violation or based solely on the dispositional departure.

We conclude that the court did not abuse its discretion by finding that the need for appellant's confinement outweighs the policies that favor probation.

**Affirmed.**