*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0425**

State of Minnesota,
Respondent,

vs.

Travis Joseph Petermeier,
Appellant.

**Filed February 29, 2016
Reserved and remanded
Ross, Judge**

Stearns County District Court
File No. 73-CR-14-9356

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Ross, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

The district court revoked Travis Petermeier's probation after it found that he admitted to violating two probation conditions by an internet post on social media that

indirectly contacted the subject of a no-contact order and by drinking beer. Because we hold that Petermeier's admissions related to his social-media statements do not constitute an admission and the record does not establish that the district court would have revoked probation on the alcohol consumption violation alone, we reverse and remand for further proceedings.

**FACTS**

Petermeier pleaded guilty to two felony domestic-abuse no-contact order (DANCO) violations for contacting S.E.P., and he was conditionally released before sentencing. But he violated the conditions by testing positive for marijuana. The district court maintained the presentence release anyway, on the original conditions.

The district court eventually sentenced Petermeier, departing downward dispositionally to impose probation under conditions prohibiting him from having any contact with S.E.P. and from consuming alcohol. But the court only reluctantly departed, noting Petermeier's previous violation of his release conditions. The district court judge cautioned Petermeier sternly, stating, "Well, I feel a little bit like a hypocrite because when I gave you the departure the last time I told you you were on a short leash. If you violate, if you don't dot your I's, you don't cross your T's you're going to prison."

Before long, Petermeier's probation officer collected a urine sample that tested positive for alcohol. A few days later, Petermeier posted the following status update on Facebook referring to S.E.P., the subject of Petermeier's DANCO conviction:

> Tonite, I reflect on how I HAVE hurt the ones closest to me
> and all I can do is apologize and say I HAVE learned. And,
> while i have learned, that doesn't mean I'm not gonna screw

2

up again.. I made promises to the closest person I have ever had in my life and I broke them. I told her I'd never smoke pot again, I did. I told her I'd never lie again and I did. And while I KNOW I love her, and care for her so much, I know I may have lost her forever because of these mistake and bad choices.. this past year+ has showed me so much about who I am and I know I have so much more work to do. some may judge me for this and so be it, BUT it needed to be said.. I'm sorry.. this will be the last post for awhile.. need to focus on what I have to do and what's important to me. Thank you all for your support, I cant say how much that means to me.

Petermeier's probation officer filed a violation report, alleging that the Facebook post violated the probation conditions that Petermeier have no contact with S.E.P and alleging that he had consumed alcohol.

At his probation revocation hearing, Petermeier attempted to enter an admission on both violations, and he waived his right to a contested hearing. The district court accepted Petermeier's admission that he violated the contact restriction based on the following exchanges, first with Petermeier's attorney, then with the prosecutor, then with the district court judge:

> [Questioning by Petermeier's attorney:]
>
> Q: And it's fair to say that in that status update you essentially apologized for your behavior and acknowledged how you felt about the other party who's involved in this and the effect that your behavior had relative to that.
> A: I do.
> Q: And at least my understanding in speaking with you is, is that you and she are not friends. She's no longer a friend of yours on Facebook.
> A: No.
> Q: Was not a friend of yours on Facebook at the time that this posting was made.
> A: No.
> Q: But you acknowledge posting this on Facebook, correct?

3

A: I do.

Q: And acknowledge, at least from a third-party standpoint, that that could be viewed as some sort of attempt through a third party to pass information on to her. Not that that was your intent, but you acknowledge that's how it could be construed.

A: It could be construed that way.

Q: And you certainly acknowledge posting that on Facebook and posting it on Facebook intentionally, not necessarily with the intent to violate the DANCO.

A: No, not at all. I do admit to it, yes, but not with the intent of her -- of contacting her in any way.

[Questioning by the prosecutor:]

Q: Mr. Petermeier, you have mutual friends on Facebook though.

A: Sure. Yes.

Q: You're friends with her daughter.

A: Yes.

Q: And her daughter, you would have presumed -- I'm not saying it was your intent -- but communicates with her mother.

A: Yes.

Q: And other friends, if they were to see something on your Facebook page, it would be reasonable for them to maybe tell [S.E.P.]

A: Maybe. I don't believe they would.

Q: It's possible --

A: -- yes, it's possible.

Q: -- in a small town, with what's going on with your legal troubles and everything you posted on Facebook, that that information is going to be passed on to her.

A: Yes.

Q: And the -- part of the status update talks about how you love her and you care about her so much, correct?

A: Yes.

[Questioning by the district court judge:]

Q: Is it fair to say that you knew or had reason to know that that information would get communicated to her?

A: I really didn't think of it like that. In fact, you know, throughout this whole thing it's been kind of told by everybody

4

to not communicate information from each other. Even her daughter won't talk to her if she talks to me. We don't communicate that sort of thing. Everyone has tried to help me with that and so, like I said, that was never my thought process of getting this information to her. I don't know where she stands right now. I don't know how things are going right now with her. That just has to wait until I can have contact with her. I wanted everyone else to know. . . .

The district court accepted Petermeier's admissions as forming a sufficient factual basis to find a violation and to revoke probation, and it executed his prison sentence.

## DECISION

As a preliminary matter, we observe that Petermeier's notice of appeal referred only to his final judgment of conviction, but his brief discusses only the revocation decision. The state's brief similarly addresses only Petermeier's challenge to the revocation. We will construe the appeal according to the manner it has been presented to us and therefore consider the merits of Petermeier's probation-revocation challenge.

Before revoking probation, the district court must designate specific conditions that were violated, find that the violation was intentional or inexcusable, and find that the need for confinement outweighs the policies favoring probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). These findings ensure that a revocation is not "a reflexive reaction to an accumulation of technical violations," but rests on "a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotations omitted). We review the district court's analysis of the *Austin* factors for an abuse of discretion. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005). But we review de novo whether the district court in fact made the required findings. *Id.*

5

We need only address the first *Austin* factor here. The district court may find a probation violation either if the state presents clear and convincing evidence of a violation or if the probationer admits to the probation violation. *See State v. Cottew*, 746 N.W.2d 632, 636 (Minn. 2008). Neither occurred here as to the no-contact restriction.

Our review of the record informs us that Petermeier's statements at his probation-revocation hearing do not constitute a proper factual basis establishing an admission to the violation and that clear and convincing evidence of a violation is otherwise lacking. It is true that Petermeier admitted that he posted the status update on Facebook. And he admitted that the post discussed how he felt about S.E.P., that someone else *might* construe the post as his attempt to get information to S.E.P., and that it was *possible* that some mutual acquaintance or S.E.P.'s daughter *might* communicate information from the post to S.E.P. But these are admissions merely to possible facts that Petermeier denied. Petermeier never admitted that he attempted or even intended to contact S.E.P. through the post. Indeed, when pressed on it, he expressly denied having that intent. He admitted only that he intentionally *posted* the information "but not with the intent . . . of contacting her in any way." Petermeier also never admitted even that he should have known that the post would result in communication to S.E.P. He affirmed to the contrary that he was no longer "friends" with S.E.P. on Facebook, meaning that he understood she would lack any direct access to the post. And he stated also that he did not believe anyone would relay the posted information to her because everyone had been told not to communicate information between them. Consistent with Petermeier's doubts that anyone would relay the

6

information to S.E.P., the state presented no evidence and made no assertion that S.E.P. ever actually received any of the information from the post.

We hold that the record evidence does not support the finding of a violation. We are satisfied that this holding does not conflict with our decision in *State v. Xiong*, 638 N.W.2d 499 (Minn. App. 2002), *review denied* (Minn. Apr. 16, 2002). We held in *Xiong* that when a probationer waives his right to a contested hearing the state need not prove the violation by clear and convincing evidence and the district court may "base its finding on the violation report and the probationer's waiver, which serves as a stipulation to the state's allegations in the violation report." *Id.* at 503. Even when a probationer waives his right to an evidentiary hearing, however, a district court must nevertheless make findings designating "the specific condition or conditions that were violated" under *Austin*'s first factor. *Austin*, 295 N.W.2d at 250. Although Petermeier waived his right to a contested hearing and the state did not need to show a violation by clear and convincing evidence, the district court was still required to identify the factual basis for the violation. Even looking at the violation report as stipulating to the state's allegations, the report does not detail facts that constitute a violation. So by stipulating to the facts as alleged in the report, Petermeier did not effectively admit to a violation arising from the internet post.

Although we hold that the district court lacked a sufficient ground in Petermeier's admissions to find a violation based on the Facebook post, we do not suggest that the district court is precluded from making the finding based on facts it might develop in an evidentiary hearing on remand, if the state pursues the violation. We hold only that the attempted admission captured in the record is an insufficient ground on which to establish

7

the finding. We are satisfied, on the other hand, that Petermeier sufficiently admitted to consuming alcohol; he acknowledged that he drank several beers, and the probation report indicated that his urine tested positive for an alcohol metabolite. But the record leaves us unsure whether the district court would have revoked Petermeier's revocation on the alcohol violation alone. We therefore do not address the violation further, and we remand for additional proceedings in the district court.

We need not address Petermeier's related contention that the district court only reflexively revoked his probation based on its prior threat that it would revoke probation for any violation. We note only that Petermeier suggests that the supreme court's recent holding in *State v. Finch* stands for the proposition that the partiality of a judge who uses this type of last-chance language will be called into question. *See State v. Finch*, 865 N.W.2d 696, 704–05 (Minn. 2015) (stating that a judge's remarks that he would revoke probation for any violation indicated that the "judge could not impartially make the findings required by the second and third *Austin* factors"). The district court did not have the benefit of the *Finch* opinion before it rendered the decision that Petermeier challenges here. Because our holding on the first *Austin* factor answers the appeal, we do not reach Petermeier's implicit *Finch* argument about the other factors.

Our previous order denied Petermeier's motion to strike certain portions of the state's addendum. Because we do not rely on any of the contested information contained in the state's addendum in making our decision, we will not revisit Petermeier's motion to strike.

**Reversed and remanded.**