*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1170**

State of Minnesota,
Respondent,

vs.

Issac Semaj Coley,
Appellant.

**Filed May 6, 2024
Affirmed
Johnson, Judge**

Winona County District Court
File Nos. 85-CR-21-1324, 85-CR-22-590

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Karin Sonneman, Winona County Attorney, Winona, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Joseph McInnis, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

Issac Semaj Coley was placed on probation subject to a condition that he enter and complete a drug-treatment-court program. Nine months later, he asked the drug-treatment court to terminate his participation in the program. Shortly thereafter, the district court that had placed him on probation revoked his probation. We conclude that the district court did not err by revoking Coley's probation and executing his prison sentences. Therefore, we affirm.

## FACTS

In August 2021, the state charged Coley in Winona County with one count of financial-transaction-card fraud, in violation of Minn. Stat. § 609.821, subd. 2(1) (2020). The state alleged that Coley stole a wallet and used the victim's debit card to make a purchase at a retail store. In October 2021, Coley pleaded guilty to the offense pursuant to an agreement that he be released pending sentencing so that he could receive inpatient treatment.

In March 2022, the state charged Coley in Winona County with three offenses, including one count of offering a forged check, in violation of Minn. Stat. § 609.631, subd. 3 (2020). The state alleged that Coley stole a purse containing a checkbook, wrote a check to himself in the amount of $600, and cashed the check. In May 2022, Coley pleaded guilty to the forged-check charge pursuant to a plea agreement in which the state agreed to dismiss the two other charges and to dismiss a charge in another pending case. The parties

2

also agreed to recommend a downward dispositional departure with a condition that Coley enter and complete a drug-treatment-court program.

In June 2022, the district court imposed sentences for both of the above-described offenses. For each offense, the district court imposed a 24-month prison sentence but stayed execution of the sentence and placed Coley on probation for five years, with conditions, including the condition that he enter and successfully complete a drug-treatment-court program in Winona County. In January 2023, the district court modified that probation condition, at the parties' joint request, to require Coley to complete a drug-treatment-court program in Olmsted County.

In the Olmsted County drug-treatment court, participants are not allowed to use marijuana, including marijuana prescribed by a physician. At seven drug-treatment-court hearings between January and May of 2023, Coley admitted to using marijuana. During that period of time, Coley also tested positive on numerous drug tests. At a drug-treatment-court hearing in March 2023, the court stated that Coley appeared unable to "get . . . through the first phase" of the program. At a drug-treatment-court hearing in June 2023, Coley stated, "I'm requesting termination from the drug court program here in Olmsted County, Your Honor." The drug-treatment court granted the request, stating, "Okay, . . . based upon your request, you're terminated from the program."

One day later, Coley's probation agent filed violation reports in Winona County alleging that Coley violated a condition of his probation by not successfully completing a drug-treatment-court program. The district court conducted a probation-violation hearing. At the outset of the hearing, Coley admitted to the alleged violation. Coley explained that

3

he requested the termination of his participation in the drug-treatment-court program because his probation agent wanted him to enter an inpatient drug-treatment program in the Twin Cities. He stated that he doubted whether "that level of programming was appropriate," that he believed that the inpatient drug-treatment program would not be able to accommodate his need for medical treatment he then was receiving in Rochester, and that he wanted to attend a community college in Rochester.

The state presented the testimony of one witness, Coley's probation agent, on the issue of an appropriate disposition. The probation agent testified that Coley submitted 46 urine samples and that 34 samples tested positive for marijuana. She also testified that Coley told her that he used marijuana to address pain and anxiety, without a prescription, and that he quit an outpatient drug-treatment program because he "did not want to be in any programming that did not ultimately support marijuana use." The probation agent also testified that, while in the drug-treatment-court program, Coley stole a bicycle and engaged in shoplifting and that the inpatient drug-treatment program was intended to "address criminality as well as chemical dependency."

Coley did not testify but introduced two exhibits into evidence. The district court revoked Coley's probation and executed his concurrent 24-month prison sentences. Coley appeals.

**DECISION**

Coley argues that the district court erred by revoking his probation and executing his prison sentences. The state has not filed a responsive brief. Nonetheless, this court will determine the appeal on the merits. *See* Minn. R. Civ. App. P. 142.03.

4

If a probationer violates one or more conditions of probation, a district court may either continue the probationer on probation or revoke probation and execute the underlying sentence. Minn. Stat. § 609.14 (2020); *see also* Minn. R. Crim. P. 27.04, subd. 3(2)(b)(iv)-(v). The supreme court has prescribed a three-step analysis to guide district courts in determining whether to revoke probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). A district court may revoke probation only if the court (1) designates the specific conditions of probation that have been violated, (2) finds that the violations were "intentional or inexcusable," and (3) finds "that need for confinement outweighs the policies favoring probation." *Id.* In making these findings, a district court "must seek to convey their substantive reasons for revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). In general, this court applies an abuse-of-discretion standard of review to a district court's decision to revoke probation. *Id.* at 605.

Coley makes five arguments for reversal, which we consider in turn.

**A.**

Coley first argues that the district court erred by finding that his failure to complete the drug-treatment-court program was intentional. Specifically, Coley argues that the district court erred by not inquiring into the reasons why he requested termination from the drug-treatment-court program. He contends that he was not at fault for his failure to complete the drug-treatment-court program because he wanted to continue receiving medical treatment in Rochester.

Coley did not make such an argument to the district court. At the outset of the probation-violation hearing, Coley's attorney stated that Coley wished to admit the alleged violation and that the only remaining issues were the "*Austin* third factor" and "redisposition." Coley personally admitted that he requested to be terminated from the drug-treatment-court program and that his request was granted. The district court followed up by asking Coley, "What specifically happened?" After Coley explained his reasons, the district court asked Coley's attorney whether he had any additional questions for Coley, and the attorney declined. At the conclusion of the hearing, the district court made thorough findings about the intentional nature of Coley's violation. Given Coley's admission and the evidence in the record, it is difficult to imagine how the district court could have found that Coley's violation was not intentional. Before making that finding, the district court gave Coley ample opportunity to explain the reasons for the termination.

Coley cites caselaw in support of his contention that a probation violation may be deemed either unintentional or excusable if the probationer is not at fault for the violation. *See State v. Cottew*, 746 N.W.2d 632, 636 (Minn. 2008) (citing *Bearden v. Georgia*, 461 U.S. 660, 668-69 (1983)). In *Bearden*, the Court held that probation cannot be revoked for failure to pay a fine or make restitution in the absence of a finding that the probationer is responsible for that failure or that alternative forms of punishment are inadequate. 461 U.S. at 672-73. This case is unlike *Bearden* because Coley was not required to make a monetary payment. *See id.* at 664-73 & n.9. Consequently, the holding in *Bearden* does not apply to Coley's violation.

Thus, the district court did not err by finding that Coley's violation was intentional.

6

**B.**

Coley also argues that the district court erred by not making a finding as to whether his violation is excusable. In considering the second *Austin* factor, a district court must determine whether a probationer's violation was "intentional *or* inexcusable." *Austin*, 295 N.W.2d at 250 (emphasis added). This court has stated in nonprecedential opinions that, because the two parts of the second factor are stated in the disjunctive, the district court is not required to find that a violation is *both* intentional *and* inexcusable. *See State v. Davis*, No. A20-0448, 2021 WL 416410, at *5 (Minn. App. Feb. 8, 2021), *rev. denied* (Minn. Apr. 28, 2021); *State v. Jackson*, No. A20-0782, 2021 WL 21437, at *2 (Minn. App. Jan. 4, 2021), *rev. denied* (Minn. Mar. 30, 2021); *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c). Because the district court found that Coley's violation was intentional, the district court did not err by not making a finding as to whether his violation was excusable.

**C.**

Coley also argues that the district court erred by dividing the hearing into a "revocation" phase and a "resentencing" phase.

Coley cites *Modtland* for the principle that a district court must "make[] the requisite three [*Austin*] findings *before* deciding whether to revoke the defendant's probation." 695 N.W.2d at 607. Findings on all three *Austin* factors are required before revocation because, although "an intentional or inexcusable probation violation is a necessary condition for probation to be revoked, it is not a sufficient condition." *Id.* at 608. Findings on all three factors "prevent[] courts from reflexively revoking probation when it is established that a defendant has violated a condition of probation." *Id.* Coley contends that the district court

7

violated these principles by "structur[ing] the hearing as if it were a plea and sentencing" and "discussing the third *Austin* factor separately from the first two factors."

The district court followed the procedures required by *Modtland*. The district court did not revoke Coley's probation until it had made findings on all three *Austin* factors. The district court made findings on the first two factors early in the hearing, after Coley's attorney informed the district court of Coley's intention to admit the alleged violation and after Coley made his admission. The district court then allowed the parties to present evidence relevant to the third *Austin* factor and the ultimate disposition of the violation. After the parties presented evidence, the district court allowed counsel for both parties to present argument about the third *Austin* factor and the ultimate disposition. The district court also allowed Coley to personally address the court. The district court then made a finding concerning the third *Austin* factor, that the need for confinement outweighs the policies favoring probation. After the third *Austin* finding, the district court revoked Coley's probation and executed his sentences.

Thus, the district court did not err in the manner in which it conducted the hearing.

**D.**

Coley also argues that the district court erred by adopting the prosecutor's arguments rather than make its own findings, thereby violating the rule that a district court must make findings on each *Austin* factor. *See Modtland*, 695 N.W.2d at 608; *Austin*, 295 N.W.2d at 250. The district court made relatively extensive findings on the third *Austin* factor. After doing so, the district court additionally stated that it was "adopting all of [the prosecutor's] arguments" because they were "a thorough, accurate recitation of the history

8

and the circumstances" of this case. The district court's independent findings, which preceded its reference to the prosecutor's argument, were sufficient to satisfy the requirement that the district court make findings on the third *Austin* factor. Thus, the district court did not err by also adopting the prosecutor's arguments.

**E.**

Coley last argues that the district court erred by finding that the need for confinement outweighs the policies favoring probation.

A district court may find that the third *Austin* factor is satisfied if it finds that any of three sub-factors are present: (1) "'confinement is necessary to protect the public from further criminal activity by the offender,'" (2) "'the offender is in need of correctional treatment which can most effectively be provided if he is confined,'" or (3) a further stay of the sentence "'would unduly depreciate the seriousness of the violation.'" *Austin*, 295 N.W.2d at 251 (quoting A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)).

In this case, the district court relied on the third sub-factor by finding that "it would absolutely unduly depreciate the seriousness of this violation if probation were not revoked." The district court reasoned that Coley's presumptive sentence was a prison sentence, that the purpose of the dispositional departure was to allow him to complete a drug-treatment-court program, and that Coley had intentionally caused his participation in that program to be terminated. Notably, the district court found that completing the drug-treatment-court program was the "most significant" condition of Coley's probation. The district court described Coley's expectation that he could "voluntarily remove [himself]

9

from intensive probation" as "not realistic." The district court did not abuse its discretion in making these findings.

Thus, the district court did not err by finding that the need for confinement outweighs the policies favoring probation.

In sum, the district court did not err by revoking Coley's probation and executing his prison sentences.

**Affirmed.**