*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0615**

State of Minnesota,
Respondent,

vs.

Zachary Jaymz Edberg-Anderson,
Appellant.

**Filed December 29, 2025**
**Affirmed**
**Wheelock, Judge**

Scott County District Court
File No. 70-CR-22-3380

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Elisabeth M. Johnson, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrew J. Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Wheelock, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WHEELOCK**, Judge

Appellant challenges the district court's revocation of his probation, arguing that the district court abused its discretion because it revoked his probation without first imposing intermediate sanctions. We affirm.

**FACTS**

In February 2022, officers executed a search warrant for narcotics at a Scott County residence in which they found appellant Zachary Jaymz Edberg-Anderson as well as multiple firearms, drug paraphernalia, and substances that tested positive for methamphetamine. Appellant and his girlfriend were living in one of the rooms at the residence, in which officers found numerous items belonging to appellant, including a credit card, clothing, a FedEx box with his name on it, and a passport. In the room's closet, officers found over 25 grams of methamphetamine in a tampon box and a Glock handgun magazine that contained a single 9mm round. Appellant is ineligible to possess ammunition or a firearm because he has a previous conviction for a crime of violence.

The officers arrested appellant, and respondent State of Minnesota charged him with one count of second-degree possession of methamphetamine in violation of Minn. Stat. § 152.022, subd. 2(a)(1) (2020), and one count of unlawful possession of a firearm or ammunition in violation of Minn. Stat. § 624.713, subd. 1(2) (2020).

Appellant pleaded guilty to second-degree controlled-substance possession, and the state agreed to dismiss the charge of unlawful possession of a firearm or ammunition. The

plea agreement included a presumptive 58-month stayed prison sentence and up to three years of probation.

At the sentencing hearing on November 15, 2023, the state informed the district court that, due to an increase in appellant's criminal-history score, the correct presumptive sentence was an executed prison sentence of 58 to 81 months. *See* Minn. Sent'g Guidelines 4.C (Supp. 2021). However, the parties agreed that appellant would move for a dispositional departure to a stayed 58-month sentence and the state would not object.

The district court granted appellant's motion for a dispositional departure because it found he was "particularly amenable to probation based on his amenability to treatment" as he was in programming at Evergreen Recovery and was "doing well." Thus, it imposed a 58-month stayed sentence and placed appellant on probation with multiple conditions, including the following:

- no alcohol/controlled substance use with the exception of prescribed medications;
- follow all instructions of probation;
- contact your probation officer as directed;
- remain law abiding;
- tell your probation officer within 72 hours if you change your address, employment, or telephone number;
- submit to random chemical testing per probation; and
- complete chemical assessment and follow all recommendations including completing current treatment program.

Soon after the sentencing hearing, however, appellant's alleged probation violations began. Appellant's probation officer reported that he refused to meet with her after his sentencing, failed to return her phone calls, and did not provide her with his current address.

3

The probation officer spoke with appellant's counselor at Evergreen Recovery, who informed her on November 22 that appellant had "numerous" positive drug tests and was not attending treatment sessions.

In December, the probation officer filed a probation-violation report alleging that appellant failed to

- refrain from the use of illegal substances;
- maintain contact with his supervising agent;
- provide a valid address, and his whereabouts were unknown;
- submit to random drug testing for the county;
- attend scheduled office visits; and
- comply with the recommendations from his chemical-use assessment, including by not remaining sober.

The district court issued a warrant for his arrest, but appellant was not arrested until about a year later. On January 27, 2025, the probation officer filed an amended probation-violation report that included an additional violation: "[appellant] has failed to complete chemical dependency programming and was terminated from programming."

Appellant admitted to failing to refrain from the use of illegal substances but denied the rest of the alleged violations. On January 30, 2025, appellant appeared for a contested revocation hearing. At the hearing, the probation officer testified that she never met with appellant because "he refused to come in for probation appointments" and told her that "he didn't have to." She also testified that his treatment counselor reported that appellant was not sober and not complying with treatment and was therefore eventually terminated from the program. The probation officer testified that, although appellant entered another

4

treatment program afterwards, he was also terminated from it after "about a month" for continued use of illegal substances and for not attending treatment sessions.

The probation officer testified that she did not believe appellant was amenable to probation or treatment. The probation officer stated that she believed appellant "meets every *Austin* factor"[1] and "needs to be in custody" for the safety of the public, to receive proper treatment, and so as not to depreciate the seriousness of the violations. Counsel for the state recommended, based on the probation officer's testimony and appellant's conduct, that the district court revoke probation and execute the stayed sentence.

Appellant's counsel argued that appellant had wanted to transfer his probation to Hennepin County because he had trust issues with Scott County, he did not have transportation to reach the probation offices, and Evergreen turned out to be a "bad place" for appellant that probation should have prevented him from attending.

During the probation officer's testimony, she explained that appellant's probation could have been transferred to a different county eventually but that he had to be in a sober residence for 60 days before that was possible. She also noted that the first probation meeting is required to be at her office for safety reasons and that she tried to send appellant a letter regarding office appointments but it was "returned to sender" after she mailed it. When the probation officer informed appellant of this, he said that her "office was stupid

---

[1] The *Austin* factors refer to the three findings a district court must make before it may revoke a defendant's probation following a violation. *See State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). "[T]he court must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that [the] need for confinement outweighs the policies favoring probation." *Id.*

and that [they] can't get anything right." The probation officer sent a second letter to a new address appellant gave to her, but that letter was returned as well. The probation officer also testified that she did not select the Evergreen program and had shared her concerns about the program but that appellant "didn't want to leave Evergreen; he was able to use there."

Appellant's counsel requested an intermediate sanction of a 60- to 90-day jail term instead of revocation of his probation, arguing that Scott County should have assisted appellant with enrollment in an abstinence-only treatment center. His counsel also argued that this was appellant's first violation hearing and that it was "only fair" to give him another chance.

After the hearing, the district court issued a written order revoking probation in which it found that appellant had violated several probation conditions, many of them "almost immediately after [he] was sentenced." The district court specifically found that, from the start of probation, appellant failed to meet with his probation officer, refused to answer her phone calls, blocked her number, did not give her a valid address, did not submit to drug testing through probation, attended the Evergreen program against his probation officer's advice, consistently tested positive for drugs, did not attend treatment sessions regularly, and was terminated from two separate treatment programs.

Based on these violations, the district court found that revocation of appellant's probation was appropriate and executed appellant's 58-month sentence.

This appeal follows.

**DECISION**

**I.** **The district court did not abuse its discretion by revoking appellant's probation without first imposing intermediate sanctions.**

If the district court finds that a probationer has violated probation, it may continue the existing stay and order probation or revoke probation and execute a sentence. Minn. R. Crim. P. 27.04, subd. 3(2)(b). The district court "has broad discretion in determining if there is sufficient evidence to revoke probation"; however, it must make specific findings before doing so, based on the *Austin* factors. *Austin*, 295 N.W.2d at 249-50. These factors require the district court to (1) identify the specific condition of probation violated, (2) determine that the violation was intentional or inexcusable, and (3) determine whether the need for confinement outweighs the policies favoring probation. *Id.* at 250. If the district court determines that it should revoke probation pursuant to the *Austin* factors, appellate courts will reverse only if there is a clear abuse of that discretion. *Id.* at 249-50.

When analyzing the third *Austin* factor, the district court must balance the "probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety." *Id.* at 250; *see also State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005). The district court must find only one of the following subfactors to determine that the balance weighs in favor of revocation:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

(iii) it would unduly depreciate the seriousness of the
violation if probation were not revoked.

*Modtland*, 695 N.W.2d at 607 (quotation omitted); *see also State v. Smith*, 994 N.W.2d 317, 320 (Minn. App. 2023) (concluding that "[o]nly one *Modtland* subfactor is necessary to support revocation"), *rev. denied* (Minn. Sept. 27, 2023). "Courts must seek to convey their substantive reasons for revocation and the evidence relied upon." *Modtland*, 695 N.W.2d at 608. The decision to revoke probation "cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted).

Appellant does not challenge any of the district court's findings regarding the *Austin-Modtland* factors; rather, he claims that, although the district court properly found that all of the factors were satisfied, it erred because it was required to either impose intermediate sanctions before revoking his probation or at least "discuss the 90-day jail sanction" that he proposed.

Appellant relies on *State v. Cottew*, 746 N.W.2d 632, 637 (Minn. 2008), to argue that probation revocation is not appropriate when rehabilitation is still possible, but his reliance is misguided. Contrary to appellant's assertion, the Minnesota Supreme Court recognized in *Cottew* that the district court "has broad discretion in determining whether to impose an intermediate sanction." 746 N.W.2d at 638 (holding that the district court was not required to analyze the *Austin* factors before imposing intermediate sanctions in a probation hearing). Ultimately, appellant does not cite any caselaw to support his assertion

that the district court was required to consider his suggestion of a jail sanction before ordering a probation revocation, nor are we aware of any.

A district court only "abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Currin*, 974 N.W.2d 567, 571 (Minn. 2022) (quotation omitted). Our review of the record persuades us that the district court's findings are based on the record and support the probation-revocation order here.

The record contains evidence that appellant was terminated from multiple treatment programs for consistently using methamphetamine despite being on probation for a methamphetamine-possession charge,[2] refused to keep in contact with his probation officer,[3] absconded from all probation requirements for over a year, repeatedly tested positive for illegal substances, did not provide a valid address, and failed to appear for drug testing and office visits with the county. Based on that evidence, the district court found that, although appellant has other treatment options available in the community, his behavior and conduct on probation demonstrate that he is not amenable to treatment or

---

[2] *See also State v. Ziesemer*, No. A23-0492, 2023 WL 7119091 (Minn. App. Oct. 30, 2023), *rev. denied* (Minn. Jan. 16, 2024). This court in *Ziesemer* considered the fact that the appellant was continuing to use methamphetamine, despite being on probation for possession of methamphetamine, as supporting probation revocation. *Id.* at *3. Nonprecedential opinions are not binding authority, but *Ziesemer* is cited here for its persuasive value. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

[3] *See also State v. Rottelo*, 798 N.W.2d 92, 95 (Minn. App. 2011), *rev. denied* (Minn. July 19, 2011). This court in *Rottelo* concluded that a district court properly revoked an appellant's probation based on his failure to remain in contact with his probation officer, even though it was his first violation and he committed no new crimes while on probation.

9

probation and would best be served by receiving treatment in confinement. As the district court stated in its order, quoting *Austin*, 295 N.W.2d at 251, "it is 'not unreasonable to conclude that treatment ha[s] failed' when a probationer 'has been offered treatment but has failed to take advantage of the opportunity or to show a commitment to rehabilitation.'"

Thus, we conclude that the district court acted within its broad discretion when it revoked appellant's probation based on its determination that the *Austin* factors and *Modtland* subfactors were satisfied, and we conclude that it was not required to specifically address appellant's request for intermediate sanctions.

**Affirmed.**